**UNITED STATES of America,**

v.

**Frederick Lee LAWS, Defendant.**

and

**Metropolitan Life Insurance Company, Garnishee.**

**No. CRIM.A. 2:03CR8.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Dec. 16, 2004.

---

Paul Arthur Driscoll, Pender & Coward PC, Virginia Beach, VA, for Defendant.

Christopher Dopke, U.S. Attorneys Office, Norfolk, VA, for Plaintiff.

## MEMORANDUM OPINION & ORDER

JACKSON, District Judge.

Before the Court is Application of the United States for a Writ of Continuing Garnishment upon a judgment entered

against Frederick Lee Laws ("Defendant"). Specifically, the Government requests a Writ of Continuing Garnishment pursuant to 28 U.S.C. § 3205(c)(1) and Federal Rule of Civil Procedure 77(c)(1) upon funds distributed by Metropolitan Life Insurance, Co. ("Garnishee") to Defendant.

Additionally before the Court are the Motions of Defendant to Quash the Garnishment Order and for Relief from the Government's Order to Stop Payment from Petitioner's Annuity. For the reasons set forth below, the Government's Application for a Writ of Continuing Garnishment is **GRANTED**. Defendant's motions are **DENIED**.

## I. FACTS AND PROCEDURAL HISTORY

From on or about April 13, 1999 until October 24, 2001, Defendant was employed as a Technical Specialist by the Department of the Navy's Space and Naval Warfare Systems Center ("SPAWARS") in Portsmouth, Virginia. On January 14, 2003, the United States filed a criminal information charging Defendant with Conspiracy to Defraud the United States under 18 U.S.C. § 371. The Government alleged that Defendant conspired to fraudulently divert Government funds to Data Management Services ("DMS"), which was owned and operated by Defendant's spouse, who Defendant referred to by her maiden name to conceal her identity. On January 28, 2003, Defendant pled guilty to Count One of the criminal information charging Defendant with Conspiracy to Defraud the United States. On April 24, 2003, the Court sentenced Defendant to twenty-four (24) months of imprisonment and ordered Defendant to pay $290,291.64

to the United States Navy in restitution. The payment of restitution is subject to interest and penalties for default and delinquency, and is payable in installments of *not less than* $200.00 per month.

Defendant is the owner of a Group Annuity Contract from which Defendant receives $910.93 per month. The payments are under the control of the Garnishee.[1] On June 3, 2003, the United States applied for a Writ of Continuing Garnishment, pursuant to 28 U.S.C. § 3205, on a net outstanding balance of $276,081.17. On July 14, 2003, the Garnishee filed its Answer to the Government, and indicated that restraints would be placed on Defendant's monthly payments until the Court directed otherwise. On July 18, 2003, Defendant filed his Objection to the Writ of Garnishment and requested a hearing. On September 22, 2003, the Court held a hearing, but the Defendant was not present nor represented.

On January 22, 2004, the Defendant filed a Motion for Relief from the Government's Order to Stop Payment and a Petition to Quash the Court Garnishment Order. Specifically, Defendant argues that (1) section 3613(a) of the Mandatory Victims Restitution Act of 1996 ("MVRA") only empowers the Government to garnish annuities in connection with "fines and deals with real estate," and neither are at issue in this case; (2) the sentence imposed by the Court ordered restitution in the amount of $200.00 per month starting sixty days after the start of Defendant's supervised release, not any kind of seizure of assets or annuities; (3) the Plea Agreement signed by Defendant makes no mention of "forfeiture of any assets or annuities"; (4) Defendant's an-

---

**1.** On July 14, 2003, the Garnishee filed a letter indicating that it believed the Federal Retirement Thrift Investment Board ("FRTIB") was the plan administrator. By letter of September 11, 2003, Garnishee amended its answer to reflect that Garnishee was, in fact, the plan administrator and in control of the funds, not the FRTIB.

nuity payments are exempted under the MVRA as payments received as part of a "pension or retirement program"; (5) Defendant's annuity payments are protected as "earnings" under the MVRA; and (6) the Defendant never received notice of the hearing, which resulted in an ex parte proceeding which prejudiced him, and "caus[ed] him to lose his right to present his defense to and exemption from the Court Order of Garnishment." On January 30, 2004, the Government filed its Response.

## II. LEGAL STANDARDS

The United States may enforce an order of restitution by the use of any means of enforcement of a civil judgment under Federal or State laws. 18 U.S.C. §§ 3613(a) & (f); *see also* 18 U.S.C. § 3664(m). This order may be enforced against "all property or rights to property" of the individual subject to the restitution order, except for property exempt from tax levy.[2] 18 U.S.C. §§ 3613(a) & (f). An individual subject to enforcement of a restitution order may not elect to exempt property pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. § 3014 ("FDCPA"). 18 U.S.C. § 3613(a)(2). Any enforcement pursuant to Federal law under § 3613 is subject to the restrictions on garnishment of 15 U.S.C. § 1673.[3] 18 U.S.C. § 3613(a)(3).

A writ of garnishment is one means of enforcing a judgment under Federal law. "A court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor." 28 U.S.C. § 3205(a). Accordingly, a writ of garnishment may be used to enforce an order of restitution pursuant to 18 U.S.C. § 3613.

## III. DISCUSSION

Defendant makes a series of arguments that his annuity payments should not be subject to the Government's writ of garnishment. The Court addresses each of these arguments in turn.

### A. Mandatory Victims Restitution Act

■ Defendant argues that § 3613(a) of the Mandatory Victims Restitution Act ("MVRA") only authorizes the Government to enforce judgments against "fines" and "real estate," and therefore the garnishment of his payments from a group annuity contract are not allowed. While the section generally deals with fines, it is also expressly applicable to orders of restitution. 18 U.S.C. § 3613(f). Additionally, Defendant appears to interpret the use of the word "property" in the statute as referring to real estate. Property is gener-

---

**2.** These items include wearing apparel and school books; fuel, provisions, furniture, and personal effects; books and tools of a trade, business, or profession; unemployment benefits; undelivered mail; certain annuity and pension payments; workmen's compensation; judgments for support of minor children; certain service-connected disability payments; and assistance under the Job Training Partnership Act. 26 U.S.C. § 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), & (12).

**3.** "[T]he maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed (1) 25 per centum of his disposable earnings for that week, or (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2)." 15 U.S.C. § 1673.

ally "any external thing over which the rights of possession, use, and enjoyment are exercised." BLACK'S LAW DICTIONARY (8th Ed.2004). Real estate is more specifically referred to as "real property." *Id.* Furthermore, it is obvious from the exceptions listed in the statute that Congress intended for more than real estate to be included in the term "property." *See* 18 U.S.C. § 3613(a)(1) (excepting from enforcement items of property, such as certain books, personal effects, furniture, and annuity and pension payments).[4] There is no indication that Congress intended to deviate from the accepted legal definition of property. Defendant's claim is without merit.

**B. Terms of Judgment of Conviction**

 Defendant contends that the Court ordered as part of his sentence that he should pay $200.00 per month beginning sixty days after his release from the custody of the Bureau of Prisons. Defendant argues that nothing in this order gives the Government the authority to seize any assets of Defendant while he is incarcerated. Defendant misreads the Court's Judgment.

The Court found as part of its Judgment that restitution in the amount of $290,291.64 to the United States Navy was due and payable immediately. (J.Crim. Case 6.) As noted above, the Government may seek a writ of garnishment to enforce an order of restitution. *See* discussion *supra* Parts II & III(A). As a special condition of Defendant's supervised release once he is released from incarceration, the Court did order that Defendant be required to pay *at least* $200.00 per month, to commence within sixty days of the beginning of supervision. (J.Crim. Case 4.) This condition only applies to Defendant's compliance with the terms of his supervised release. It does not in any way restrict the Government's ability to enforce the order of restitution. This claim is also without merit.

**C. Terms of the Plea Agreement**

 Defendant contends that the terms of his plea agreement with the Government did not contain any reference to seizure, forfeiture, or garnishment of any assets of the Defendant. The plea agreement specifically states that Defendant understood that "[t]he maximum penalty for this offense is .... full restitution ..." (Plea Agreement ¶ 1) and that "[t]he defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses" (Plea Agreement ¶ 3). Defendant clearly was aware that he would be required to pay the United States Navy as a result of the judgment against him. It is not relevant that the plea agreement did not specify the means by which the Government would seek to enforce this judgment. The Government has the authority to enforce the judgment through a writ of garnishment. *See* discussion *supra* Parts II & III(A). Absent provisions in the plea agreement specifically restricting this authority, Defendant's claim is baseless.

**D. Pension or Retirement Program Exemption**

 Defendant contends that his Group Annuity Contract is exempt from garnishment under the MVRA by 18 U.S.C. § 3613(a)(1). The Government may not enforce a judgment pursuant to the MVRA by garnishing properties that are

[a]nnuity or pension payments under the Railroad Retirement Act, benefits under

---

**4.** The Court also notes that under the FDCPA, referenced in the statute, "property" is defined as "any present or future interest ... in real, personal ..., or mixed property, tangible or intangible, vested or contingent, wherever located and however held." 28 U.S.C. § 3002(12).

the Railroad Unemployment Insurance Act, special pension payments received by a person whose name has been entered on the Army, Navy, Air Force, and Coast Guard Medal of Honor Roll (38 U.S.C. 1562), and annuities based on retired or retainer pay under chapter 73 of title 10 of the United States Code. 26 U.S.C. § 6334(a)(6); *see* 18 U.S.C. § 3613(a)(1). Defendant contends that his annuity payments qualify for exemption as an annuity pursuant to chapter 73 of title 10 of the United States Code.[5] However, chapter 73 applies solely to annuity payments to the survivors of a serviceperson *based upon* that serviceperson's retired or retainer pay. *See, e.g.,* 10 U.S.C. § 1437(c) (discussing procedures for finding a missing serviceperson to be dead so that survivors may receive benefits and for recovering paid out annuities in the even the serviceperson is discovered to be alive); 10 U.S.C. § 1434(a) (discussing to which survivors the serviceperson may make the annuities payable and in what shares). Defendant is obviously not deceased, and therefore the annuity payments at issue cannot be protected by 18 U.S.C. § 3613(a)(1).[6]

Defendant does not allege nor can the Court find that Defendant's annuity payments qualify under any other exemption listed in 18 U.S.C. § 3613(a)(1). These are the only exemptions recognized by the MVRA. Any other claims Defendant might raise that the payments should be exempt-

ed by another statute are meritless.[7] *See* 18 U.S.C. § 3613(a) (stating that judgment may be enforced pursuant to the MVRA "[n]otwithstanding any other Federal law").

### E. Earnings

■ Defendant contends that even if the Government is able to garnish his annuity payments, pursuant to 18 U.S.C. § 3613(a)(3), the garnishment is subject to the restrictions on garnishment of the Consumer Credit Protection Act, 15 U.S.C. § 1673 ("CCPA"). The CCPA provides that

the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed (1) 25 per centum of his disposable earnings for that week, or (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

15 U.S.C. § 1673(a). The question before the Court is whether Defendant's annuity payments constitute "earnings" under the CCPA.[8] "The term 'earnings' means com-

---

**5.** 10 U.S.C. §§ 1431–60b.

**6.** The Court makes no determination as to whether these payments would qualify for protection if they were being paid to any survivors of Defendant.

**7.** The Government presumes that Defendant also brings an argument for exemption under 5 U.S.C. § 8437(3) regarding exemptions from judgment for Thrift Savings Plans. The Court finds that the language of 18 U.S.C. § 3613(a) makes it clear that other statutory

exemptions do not apply to the circumstances of this case.

**8.** The Government argues that § 1673(a) should not apply because of an exception in § 1673(b) for "any order of any court of the United States having jurisdiction over cases under chapter 13 of Title 11." The Government contends that because this Court has such jurisdiction generally, the statute should be read to except orders of this Court in all cases. The Court finds that the Government's

pensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments to a pension or retirement program." 15 U.S.C. § 1672(a). The plain language of § 1672(a) indicates that it is meant to protect funds as they pass from the employer to the employee, in whatever form that compensation takes, including payments by the employer *into* a pension or retirement program on behalf of the employee. It is not clear from the plain language of the statute to what extent such funds are protected once they leave the hands of the employer, even if the employee later receives the funds in periodic payments.

■ The United States Supreme Court ("Supreme Court") has affirmed that "earnings" under the CCPA are "limited to 'periodic payments of compensation and (do) not pertain to every asset that is traceable in some way to such compensation.'" *Kokoszka v. Belford*, 417 U.S. 642, 651, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974)(quoting *In re Kokoszka*, 479 F.2d 990, 997 (2d Cir.1973)). Wages which have voluntarily converted into savings are no longer earnings under the CCPA. *Gehrig v. Shreves*, 491 F.2d 668, 674 (8th Cir.1974)(citing *In re Kokoszka*, 479 F.2d at 996–97). This distinction meets with the Congressional purpose in passing the CCPA, which was to reduce the likelihood that garnishment would result in the debtor losing (or quitting) employment. 15 U.S.C. § 1671(a)(2). The garnishment of funds which have already passed to the debtor does not create the same risk that the debtor will lose interest in being employed.

A Federal Thrift Savings Plan ("TSP") is a defined contribution plan, in that the contributions made to the plan are entirely voluntary, as opposed to other federal retirement programs, which are based on the employee's years of service and salary. Federal Retirement Thrift Investment Board, *The Thrift Savings Plan, in* TSP Features, *available at* http://www.tsp.gov/features/chapter01.html (last visited Dec. 9, 2004). Once an employee separates from Federal service, the employee is eligible to withdraw the funds in the plan, or leave all or any portion of the funds in the plan. Federal Retirement Thrift Investment Board, *Getting Your Money Out After You Separate, in* TSP Features, *available at* http://www.tsp.gov/features/chapter13.html (last visited Dec. 14, 2004). A TSP Annuity is considered a withdrawal option. Federal Retirement Thrift Investment Board, Thrift Savings Plan: TSP Annuities 1 (July 2004), *available at* http://www.tsp.gov/forms/tspbk05.pdf. A TSP annuity is not one of the basic annuities resulting from the standard retirement programs. *Id.* Garnishee is currently the TSP annuity provider, and administers the annuity once it is purchased with funds from the employee's TSP. *Id.* at 2. Defendant has transferred his account balance to Garnishee, as the annuity provider. The funds being distributed to Defendant were set aside as voluntary savings, and were withdrawn from the TSP retirement program in order to purchase Defendant's annuity plan. As at least one district court has noted, "*voluntary* contributions of monies by the employee/debtor to an individual retirement account do not fall within the definition of 'earnings' and, hence, do not have the protection afforded by the 25% maximum in 15 U.S.C. § 1673." *Aetna Cas. and Sur. Co. v. Rodco Autobody*,

reading of the statute is creative, but too broad. The Court is convinced that statute is referring to circumstances where the Court has jurisdiction over a specific case because of chapter 13 of Title 11, not generally excepting the Court's orders because it might one day have a case before it pursuant to chapter 13 of Title 11.

965 F.Supp. 104, 109 (D.Mass.1996) Therefore, the payments being made to Defendant are not "earnings" under the CCPA. Defendant is not entitled to a reduction in the amount of garnishment pursuant to the CCPA.

**F. Ex Parte Proceeding**

Defendant asserts that he never received notice of the hearing held on September 22, 2003. Defendant claims he was prejudiced by his absence at the hearing. The Court first entered an order giving Defendant notice of a hearing on this matter on August 1, 2003. The hearing was originally scheduled for August 20, 2003. On August 26, 2003, Defendant was given notice that the hearing was rescheduled to September 22, 2003.

Service of notice is completed by "[m]ailing a copy to the last known address of the person served." FED. R. CIV. P. 5 (West 2004). The validity of service is not affected by whether notice was actually received by the party. *United States v. Wright,* No. 00–4030, 2000 WL 1846340, at *2 (4th Cir. Dec.18, 2000)(citing *In re Eagle Bus. Mfg. Inc.,* 62 F.3d 730, 735 (5th Cir.1995)). Accordingly, the serving party must show that the notice was actually mailed. *Wright,* 2000 WL 1846340, at *2–3. A valid certificate of service creates a presumption that the notice was actually mailed. *Id.* at *3.

In this case, a valid certificate of service was filed on August 28, 2003, indicating that notice of the hearing was served upon Defendant. Defendant has provided no evidence to rebut the presumption that the notice was actually mailed. Moreover, the record reflects that Defendant received subsequent pleadings from the Government at the same address. Nor does the Court find that Defendant was prejudiced by his absence at the hearing. The Court finds that there is no question before it where additional facts or arguments on behalf of Defendant would have aided in the Court's deliberations.

**IV. CONCLUSION**

For the reasons set forth above, Defendant's Motions Objecting to the Writ of Continuing Garnishment are **DENIED.**

The Court finds that Defendant has no valid claims of exemption. The United States has complied with the statutory requirements for the issuance of a Garnishment Disposition Order. Accordingly, it is **ORDERED** that the Garnishee, Metropolitan Life Insurance Company, shall pay to the Clerk of Court, United States District Court, 600 Granby Street, Norfolk, VA 23510 the entire present value of the annuity owned by the Defendant (Frederick L. Laws, ssn 342–36–2392, Ground Annuity Contract # 9374).

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**