# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 20, 2010

Lyle W. Cayce
Clerk

No. 09-30218

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

KERRY DE CAY; STANFORD BARRE,

Defendants - Appellants

LOUISIANA SHERIFFS PENSION AND RELIEF FUND,

Garnishee - Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, and KING and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Kerry DeCay, Stanford Barre, and the Louisiana Sheriffs Pension and Relief Fund ("LSPRF") appeal the district court's order granting garnishment of DeCay's contributions to and Barre's monthly benefits from state pension funds held by the LSPRF. We conclude that the United States may garnish DeCay's and Barre's retirement benefits to satisfy a criminal restitution order, but that the United States is limited to garnishing twenty-five percent of Barre's monthly pension benefit. Accordingly, we REVERSE the district court's entry of the final

No. 09-30218

garnishment orders as to Barre, AFFIRM as to DeCay, and REMAND for proceedings consistent with our holding.

## I. Factual & Procedural Background

Kerry DeCay and Stanford Barre pleaded guilty to one count each of mail fraud, conspiracy to commit mail fraud, and obstruction of justice for their roles in a scheme to defraud the City of New Orleans ("the City"). At sentencing, the district court determined that the City had suffered an injury compensable under the Mandatory Victims Restitution Act ("MVRA"), and ordered DeCay and Barre to pay $1,064,362.15, jointly and severally, in restitution. After judgment was entered, the United States moved for writs of garnishment under the Federal Debt Collection Procedures Act ("FDCPA") seeking seizure of the defendants' interests in their pension funds to satisfy the restitution order. The district court found that the statutory prerequisites to garnishment were satisfied, *see* 28 U.S.C. § 3205(b), and issued the writs of garnishment to the LSPRF.

The LSPRF answered the garnishment orders by stating that DeCay currently was eligible only for an immediate lump-sum withdrawal of the $77,898 he had contributed toward his retirement and that Barre was currently receiving a monthly pension benefit of $2,464.72. The LSPRF asserted that the pension benefits were exempt from seizure under federal and Louisiana law and that enforcement of the writs against it as garnishee would violate the Tenth Amendment to the United States Constitution. The LSPRF also argued that, to the extent that garnishment is proper, the United States failed to follow the appropriate formal procedures to withdraw DeCay's employee contributions. Regarding Barre, the LSPRF argued that even if garnishment were proper, the Consumer Credit Protection Act ("CCPA") limits the United States' right to garnish Barre's pension to twenty-five percent of his monthly benefit.

2

No. 09-30218

DeCay, proceeding pro se, adopted the LSPRF's brief.  Barre also objected to the writ of garnishment against him, asserting that the Tenth Amendment precludes the United States from garnishing his pension benefits and, in the alternative, that the CCPA prohibits the United States from garnishing more than twenty-five percent of his pension benefits.

The district court overruled the appellants' objections to the garnishment writs and held that the United States could garnish the entire amount of DeCay's contributions to the LSPRF ($77,898), as well as the full amount of the monthly benefits paid by the LSPRF to Barre ($2,464.72).  Accordingly, the district court entered final orders of garnishment compelling the LSPRF to immediately pay the United States $77,898, representing the present cash-out value of DeCay's employee contributions to the LSPRF, as well as 100% of any future distributions of pension funds due to Barre.  The LSPRF and Barre filed motions for a new trial or to alter or amend the judgment.  DeCay adopted the LSPRF's motion.  The district court denied the motions.

The LSPRF, DeCay, and Barre filed the instant appeal.[1]  They assert that the garnishment orders violate federal and Louisiana law, including the Tenth Amendment to the United States Constitution.  The appellants argue in the alternative that, if garnishment is proper, the district court erred by not requiring the United States to complete certain formalities before withdrawing DeCay's employee contributions and by allowing the United States to garnish the full amount of Barre's monthly pension benefit.

## II.  Standard of Review

We review a district court's construction and application of a statute de novo.  *United States v. Williams*, 602 F.3d 313, 315 (5th Cir. 2010); *see also*

---

[1] The LSPRF timely filed an appeal from the final orders of garnishment entered against DeCay and Barre.  Barre timely appealed the final order of garnishment entered against him.  DeCay filed a notice of appeal from the denial of his adopted motion for a new trial or to alter or amend the judgment.

3

No. 09-30218

*United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009) (stating that this court reviews the constitutionality of a federal statute de novo). Similarly, the "preemptive effect of a federal statute is a question of law that we review de novo." *Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 407 (5th Cir. 2010).

## III. Standing

Before we address the merits of the appellants' arguments, we must determine whether the LSPRF has standing to assert arguments on appeal. *United States v. Holy Land Found. for Relief & Dev.*, 445 F.3d 771, 779 (5th Cir. 2006) ("When standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable.") (internal quotation marks and citation omitted). The United States asserts that the LSPRF lacks standing to object to the writs of garnishment because the LSPRF does not have a personal interest in the retirement benefits and thus has not suffered an injury-in-fact.

> In addressing a plaintiff's standing, the Supreme Court has required:
>
> (1) 'injury in fact,' by which we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the prospect of obtaining relief from the injury as a result of the favorable ruling is not too speculative.

*Ne. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663-64 (1993) (internal citations and quotation marks omitted). The Supreme Court further has observed that the nature and extent of the facts that

must be alleged to establish standing "depends considerably upon whether the plaintiff is himself an object of the action . . . at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). But when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed." *Id*. at 562.

Of course, the LSPRF did not come to court seeking relief. The United States obtained an order compelling the LSPRF to turn over funds in its possession representing any interest DeCay and Barre may have in any property subject to the LSPRF's control, thus drawing the LSPRF into the instant litigation. The writs of garnishment compel the LSPRF to take particular action, and the LSPRF asserts that the ordered action is unconstitutional under the Tenth Amendment and, as to DeCay, subjects it to potential double exposure in the future. In essence, the LSPRF is saying to the court "you can't make me do this." Having been brought before the court involuntarily by another party, we conclude that the LSPRF has the ability to say it cannot be the object of such court actions. [2] Accordingly, the LSPRF, as the object of the writ of garnishment and as a sovereign entity, has standing to assert that the United States lacks the

---

[2] Of course whether LSPRF has standing to make the argument is distinct from whether the argument has merit, a matter we address later.

constitutional authority to compel it to release the funds.[3]  *See Lujan*, 504 U.S. at 561; *Holy Land Found.*, 445 F.3d at 780.[4]

We need not decide whether the LSPRF has standing to raise the remaining objections to garnishment because DeCay and Barre plainly have standing to assert exemptions to the garnishment of their property.  Because DeCay and Barre raise the same objections to garnishment that the LSPRF makes, this court has jurisdiction to decide the case.  *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263-64 (1977) ("In the ordinary case, a party is denied standing to assert the rights of third persons.  But we need not decide whether the circumstances of this case would justify departure from that prudential limitation . . . [f]or we have at least one individual plaintiff who has demonstrated standing to assert these rights as his own."); *see also Horne v. Flores*, 129 S. Ct. 2579, 2592 (2009) ("Because the superintendent clearly has standing to challenge the lower courts' decisions, we need not consider whether the Legislators also have standing to do so.").  Having concluded that the appellants possess standing to challenge the final orders of garnishment, we now turn to the merits of this dispute.

---

[3] The LSPRF's position in this case is similar to that of a garnishee asserting that the district court lacks personal jurisdiction over it or a foreign garnishee asserting immunity as a defense to the garnishment order.  We have never held that a garnishee in either of those situations lacks standing to object to the garnishment proceeding.  *See*, *e.g.*, *FG Hemisphere Assocs., LLC v. Republique du Congo*, 455 F.3d 575, 584 (5th Cir. 2006) ("The sovereign immunity claim may be raised by a garnishee as well as a foreign sovereign."); *Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo Gen.*, 923 F.2d 380, 391-92 (5th Cir. 1991) (holding that the district court lacked personal jurisdiction over the garnishee and that the garnishee, as an agency of a foreign state, was "entitled to invoke the shield of sovereign immunity, whether against direct claims or an indirect writ of garnishment").

[4] Because of our conclusion that the double exposure question is not ripe, *see infra* at Section IV.C., we do not decide whether LSPRF has standing to urge its argument that the court's order subjects it to double exposure.

No. 09-30218

IV.  Merits

The MVRA makes restitution mandatory for certain crimes, "including any offense committed by fraud or deceit," 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii), and authorizes the United States to enforce a restitution order in accordance with its civil enforcement powers.[5]  The MVRA broadly permits the United States, notwithstanding any other federal law, to enforce a restitution order "against all property or rights to property of the person fined."  § 3613(a).  Section 3613 of the MVRA sets forth several enumerated exceptions to the United States' authority to garnish any and all of the debtor's property to satisfy a restitution order; however, the statute does not exempt state-run pension plans.[6]  Further, § 3613(a)(2) explicitly states that the exemptions contained in the FDCPA, 28 U.S.C. § 3014, do not apply to the enforcement of a federal criminal judgment.

The appellants collectively make three arguments why the district court erred in issuing the final garnishment orders against Barre and Decay.  First, the appellants assert that the defendants' pension benefits are exempt from garnishment under federal and state law.  Second, Barre argues that, if the United States may garnish his retirement benefits, the CCPA limits the United States to garnishment of twenty-five percent of his monthly pension benefits.  Third, the LSPRF, joined by DeCay, asserts that, if the United States is allowed to garnish Decay's contributions into his retirement, the United States is

---

[5] The FDCPA sets forth the civil enforcement procedures used by the United States to recover monies owed under a restitution order.  28 U.S.C. § 3001(a)(1).

[6] The MVRA incorporates most of the exemptions contained in § 6334(a) of the Internal Revenue Code, which exempts particular property from levy for payment of federal taxes. The only § 6334 exemption relevant to pension plans applies to four types of federally authorized pension plans, including Railroad Retirement Act pensions, Railroad Unemployment Insurance Act pensions, and pensions received by certain military-service persons.  I.R.C. § 6334(a)(6).  None of these exemptions are applicable to the pension benefit plan at issue in the instant case.

required to apply for a withdrawal of DeCay's employee contributions. We address each of these arguments in turn.

## A. Garnishment of Pension Benefits Under the MVRA

The appellants assert that the United States may not garnish pension benefits under the MVRA because (1) § 401(a)(13) of the Internal Revenue Code ("IRC") makes pension benefits inalienable; (2) the Tenth Amendment to the United States Constitution precludes the United States from garnishing pension funds controlled by the LSPRF; and (3) Louisiana constitutional and statutory law exempt pension benefits from garnishment.

## 1. IRC § 401(a)(13)

The LSPRF argues that the defendants' pension benefits are exempt from garnishment because the IRC prohibits the assignment or alienation of retirement benefits. I.R.C. § 401(a)(13)(A). Section 401(a)(13)(A) states that "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." This circuit has never addressed whether § 3613(a) of the MVRA overrides § 401(a)(13) of the IRC.

Section 3613(a) of the MVRA states that "*Notwithstanding any other Federal law* . . . a judgment imposing a fine may be enforced against all property or rights to property of the person fined." (emphasis added). This language is qualified only by the enumerated exceptions contained in § 3613(a)(1)–(3). We conclude that the language in § 3613(a) authorizing the United States to enforce a garnishment order against "all property or rights to property" of the debtor, "[n]otwithstanding any other Federal law," is sufficient to override the anti-alienation provision of the IRC. Several factors compel us to conclude that the MVRA allows garnishment of a defendant's retirement benefits to satisfy a criminal restitution order.

8

First, the Supreme Court has recognized that the use of a "notwithstanding" clause signals Congressional intent to supersede conflicting provisions of any other statute. *Caseros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) ("[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section. Likewise, the Courts of Appeals generally have interpreted similar 'notwithstanding' language . . . to supersede all other laws, stating that a clearer statement is difficult to imagine.") (internal quotation marks and citations omitted).

The appellants argue that the "notwithstanding" clause is insufficient to override the anti-alienation language in § 401(a)(13) of the IRC under the Supreme Court's decision in *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365 (1990). In *Guidry*, the Supreme Court was faced with the question of whether § 501(b) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA")—which provided pension funds with a private right of action to "recover damages or secure an accounting or other appropriate relief for the benefit of the labor organizations"—allowed the government to create a constructive trust on a defendant's pension benefits. The Court held that the "other appropriate relief" language in the LMRDA was insufficient to override the anti-alienation provision in § 206(d) of the Employee Retirement Income Security Act ("ERISA"). *Id*. at 375-76 ("We do not believe that congressional intent would be effectuated by reading the LMRDA's general reference to 'other appropriate relief' as overriding an express, specific congressional directive that pension benefits not be subject to assignment or alienation.").

Unlike the general "other appropriate relief" language contained in the LMRDA, the "notwithstanding any other Federal law" clause signals a clear Congressional intent to override conflicting federal law. Indeed, we agree with our sister circuit that "it appears that Congress accepted the Supreme Court's

invitation in *Guidry* by enacting the [MVRA]." *United States v. Irving*, 452 F.3d 110, 126 (2d Cir. 2003); *see also United States v. Novak*, 476 F.3d 1041, 1053 (9th Cir. 2007) (en banc) ("In sum, all standard principles of statutory construction support the conclusion that MVRA authorizes the enforcement of restitution orders against retirement plan benefits, the anti-alienation provision of ERISA notwithstanding."). Our conclusion is bolstered by the fact that Congress exempted certain retirement plans from garnishment under the MVRA, *see* § 3613(a)(1) (incorporating the exemptions in IRC § 6334(a)(6) for certain federal annuity and pension payments), but did not include state-run pension plans in the list. *Cf. Waggoner v. Gonzales*, 488 F.3d 632, 636 (5th Cir. 2007) ("The canon of statutory construction '*expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another)' indicates that [the listed ground] is the only requirement.") (citation omitted).

Second, reading § 3613(a) to allow garnishment of the defendants' retirement benefits is consistent with the MVRA's statutory scheme and purpose. The only property exempt from garnishment under § 3613(a) is property that the government cannot seize to satisfy the payment of federal income taxes. 18 U.S.C. § 3613(a). Section 3613(c) underscores the Congressional directive that restitution orders should be satisfied in the same manner as tax liabilities. 18 U.S.C. § 3613(c) (stating that an order of restitution imposed under this chapter "is a lien in favor of the United States on all property and rights to property of the person fined *as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986*") (emphasis added). As we have already recognized, pension plan benefits are subject to levy under the IRC to collect unpaid taxes. *See Shanbaum v. United States*, 32 F.3d 180, 183 (5th Cir. 1994); *see also Irving*, 452 F.3d at 126 ("ERISA pension plans are not exempted from payment of taxes under 26 U.S.C. § 6334 [of the IRC], and thus they should not be exempted from payment of criminal

fines. . . . Moreover, § 3613(c) [of the MVRA] demands that criminal fines in favor of the United States should be enforced in the same manner as a tax liability would be enforced.").

Third, other circuit and district courts have concluded that the United States may garnish a defendant's pension benefits to satisfy a restitution order, despite similar anti-alienation language contained in § 206(d) of ERISA. *See Irving*, 452 F.3d at 126; *Novak*, 476 F.3d at 1053; *United States v. Lazorwitz*, 411 F. Supp. 2d 634, 637 (E.D.N.C. 2005) (holding that "neither ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1), nor the anti-alienation provision in the Internal Revenue Code, 26 U.S.C. § 401(a)(13), provide a bar to the garnishment of a qualified pension plan"). Section 206(d) of ERISA states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). We find these cases persuasive, *see Patterson v. Shumate*, 504 U.S. 753, 759 (1992) (referring to IRC § 401(a)(13) and ERISA § 206(d) as "coordinate section[s]" containing "similar restrictions"), and conclude that § 3613(a) of the MVRA authorizes the United States to garnish retirement benefits, notwithstanding the anti-alienation provision in § 401(a)(13) of the IRC.

2.  The Tenth Amendment

The appellants also argue that the garnishment writs violate the Tenth Amendment to the United States Constitution. This claim hinges on the appellants' contention that federal law does not govern state-run benefit plans and the MVRA does not supersede Louisiana's broad police powers. We reject the appellants' Tenth Amendment argument.

The Tenth Amendment declares that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. When Congress properly exercises its authority under an enumerated constitutional power, the

No. 09-30218

Tenth Amendment is not implicated.  *See New York v. United States*, 505 U.S. 144, 156 (1992); *Deer Park Indep. Sch. Dist. v. Harris County Appraisal Dist.*, 132 F.3d 1095, 1099 (5th Cir. 1998).  The appellants do not contest that Congress passed the MVRA and FDCPA pursuant to an enumerated constitutional power.[7]

Nor do the appellants contest that the Necessary and Proper Clause grants Congress the authority to craft appropriate penalties to enforce its criminal laws. *United States v. Comstock*, 130 S. Ct. 1949, 1958 (2010) ("Neither Congress' power to criminalize conduct, nor its power to imprison individuals who engage in that conduct, nor its power to enact laws governing prisons and prisoners, is explicitly mentioned in the Constitution.  But Congress nonetheless possesses broad authority to do each of those things in the course of 'carrying into Execution' the enumerated powers 'vested by' the 'Constitution in the Government of the United States,' Art. I, § 8, cl. 18 - - authority granted by the Necessary and Proper Clause.").[8]

The appellants assert that allowing the United States to garnish pension benefits administered by the LSPRF violates the Tenth Amendment because the federal government is interfering with state administration of pension benefits. The appellants argument here is misdirected.  Garnishing DeCay's and Barre's pension benefits has no effect on Louisiana state law; rather it penalizes DeCay and Barre for violating federal law.  While the LSPRF is implicated as a garnishee, its pension system is not altered by requiring the LSRPF to pay the

---

[7] It is also undisputed that Congress had the authority to convict Barre and DeCay of the predicate crimes underlying the restitution order.  *See, e.g., United States v. Brumley*, 116 F.3d 728, 730 (5th Cir. 1997) (holding that the Commerce Clause supports the mail fraud criminal statute).

[8] The parties submitted letters briefing the impact of the Supreme Court's decision in *Comstock* on the instant case.  *See* FED. R. APP. P. 28(j).  We agree with the Government that *Comstock* supports a conclusion that Congress properly exercised its authority to enact the MVRA making restitution mandatory for particular crimes and that, pursuant to this authority, the United States may garnish a defendant's state pension benefits.

United States, rather than the judgment-debtors. Further, to the extent that a state desires to participate in the management of pension benefits, it must submit to federal criminal and civil laws allowing for debt-collection measures. 28 U.S.C. § 3003(d) (stating that the FDCPA "shall preempt State law to the extent such law is inconsistent with a provision of this chapter"). The federal government's inability to garnish state-run pension benefits would substantially impair the effectiveness of the FDCPA and MVRA. *See United States v. Phillips*, 303 F.3d 548, 551 (5th Cir. 2002) ("The FDCPA . . . provides a uniform system for prosecutors to follow rather than resorting to the non-uniform procedures provided by the states."). Because the United States has the constitutional authority to impose mandatory restitution for particular federal crimes and seek garnishment of any available resources to satisfy that restitution order, we reject the appellants' Tenth Amendment challenge.

3. Louisiana Law

The appellants assert that the United States lacks the authority to garnish DeCay's and Barre's pension benefits because Louisiana law precludes enforcement of a restitution order against pension benefits. *See* LA. CONST. art. X, § 29(E)(5)(a) (1974); LA. REV. STAT. § 11:2182 (1991). To the extent Louisiana law is inconsistent with the FDCPA and MVRA, Louisiana law is preempted. 28 U.S.C. § 3003(d); *see also United States v. Wilson*, No. CR-305-008, 2007 WL 4557774, at *1 n.2 (S.D. Ga. Dec. 20, 2007) ("To the extent that state law . . . conflicts with federal law authorizing the garnishment of Defendant's pension benefits, it is preempted."); *United States v. McClanahan*, No.3:03-00053, 2006 WL 1455698, at *4 (S.D. W. Va. May 24, 2006) ("Although West Virginia prohibits the garnishment of state pensions, federal law expressly preempts state exemptions when the federal government is attempting to collect a fine or restitution.").

In sum, the MVRA authorizes the United States to use its civil enforcement powers to garnish a defendant's retirement plan benefits, notwithstanding the fact that pension benefits are generally inalienable under federal and state law.

B.  The CCPA's Limitation on Garnishment of Disposable Earnings

The LSPRF and Barre assert that, even if Barre's retirement benefits are subject to garnishment, the United States cannot garnish more than twenty-five percent of Barre's monthly pension benefits under § 303 of the CCPA.  Section 3613(a)(3) of the MVRA states that the protections of the CCPA shall apply to enforcement of the judgment under either federal or state law.  The CCPA provides that

> the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed
>> (1) 25 per centum of his disposable earnings for that week, or
>> (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less.  In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

15 U.S.C. § 1673(a).

The parties dispute whether Barre's monthly benefit payments constitute "earnings" under the CCPA.  The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and *includes periodic payments pursuant to a pension or retirement program*." 15 U.S.C. § 1672(a) (emphasis added).

14

The Supreme Court has cautioned that the terms "earnings" and "disposable earnings" under the CCPA are "limited to 'periodic payments of compensation and (do) not pertain to every asset that is traceable in some way to such compensation.'" *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974) (citation omitted). Here, the question is whether payments made from an employer's retirement program to an employee are too attenuated to be considered "earnings" under the CCPA.

The district courts around the country have divided over whether monthly pension-benefit payments constitute "earnings" under the CCPA. Several district courts have concluded that "once passed to a retirement account or annuity in the hands of the employee, the funds in the account or annuity are not 'earnings' under the CCPA, and thus not subject to the 25% cap, even if they are distributed in periodic payments—in other words, the distributions from the fund to the defendant are not 'disposable earnings' under § 303." *United States v. Belan*, No. 2:07-x-50979, 2008 WL 2444496, at \*3 (E.D. Mich. June 13, 2008); *see also United States v. Crawford*, F-04-0200, 2006 WL 2458710, at \*2-3 (E.D. Cal. Aug. 22, 2006); *United States v. Laws*, 352 F. Supp. 2d 707, 713-14 (E.D. Va. 2004). However, at least one district court has reached the opposite conclusion and held that periodic payments of retirement benefits are "earnings" under the CCPA. *McLanahan*, 2006 WL 1455698, at \*3 (holding that "under clear statutory language, it appears that the Government may garnish only 25% of the Defendant's pension").

We find the statutory language unambiguous and hold that the United States may garnish only twenty-five percent of Barre's monthly pension benefits. The statute explicitly defines "earnings" to include "periodic payments made *pursuant to* a pension or retirement program." 15 U.S.C. § 1672(a)(emphasis added). The term "pursuant to" is generally defined as "in compliance with; in accordance with; under [or] . . . as authorized by . . . [or] in carrying out."

No. 09-30218

BLACK'S LAW DICTIONARY (8th ed. 2004).[9]  The parties do not dispute the terms
of the pension plan or that the plan entitles Barre to monthly pension-benefit
payments.  Because the United States does not dispute that the terms of the
pension plan authorize Barre to receive monthly pension benefits, we conclude
that the payments are being made "pursuant to" the pension fund and therefore
constitute "earnings" under the CCPA.[10]  Accordingly, we conclude that the
United States may not garnish more than twenty-five percent of Barre's monthly
pension benefits under the CCPA.

C.  Formalities of DeCay's Cash-Out

Finally, the LSPRF asserts that the district court erred by allowing the
United States to cash-out DeCay's contributions to his retirement account
without applying for a refund.  The LSPRF asserts that the garnishment order
as to DeCay is either improper or incomplete because the United States did not
apply for a withdrawal of DeCay's benefits.  The final garnishment order issued
by the district court compels the LSPRF to "immediately pay to the United

---

[9] We observe that the cases cited by the United States misquote the statutory language
defining "earnings" in concluding that payments *to* a pension fund are earnings, whereas
payments *from* a pension fund are not.  Those cases mistakenly quote the statutory definition
of earnings as limited to "periodic payments *to* a pension or retirement program."  *See Belan*,
2006 WL 2444496, at *3, *Laws*, 352 F. Supp. 2d at 713; *Aetna Cas. & Sur. Co.*, 965 F. Supp.
104, 109 (D. Mass. 1996). We conclude that the "pursuant to" phrase includes periodic
payments *from* the pension fund to the employee if the payments are being made in
accordance with the terms of the plan.

[10] Our conclusion is also consistent with the legislative history and Congressional intent
behind the passage of § 303 of the CCPA.  In passing the CCPA, Congress was attempting to
combat the problems of unemployment and bankruptcy that frequently resulted from the
unrestricted garnishment of a debtor's wages. H.R. REP. NO. 1040, 90th Cong., 2d Sess. (1968),
*reprinted in* 1968 U.S.C.C.A.N. 1962, 1979.  The Committee explicitly recognized that
unrestricted garnishment of a debtor's wages frequently resulted in "a disruption of
employment, production, and consumption," harming the debtor and interstate commerce. *Id*.
at 1063.  Retirement benefits, like wages, are intended to provide a "continued means of
support" and subsistence for a judgment-debtor and his family.  Congress incorporated § 303
of the CCPA into the MVRA,  recognizing that the purpose of a restitution order would be
thwarted if it simultaneously turned the judgment-debtor into a ward of the state and denied
the debtor the ability to "insure a continued means of support" for him and his family.

States of America the amount of $77,898.00, which represents the present cash-out value of DeCay's pension account with the LSPRF."

The parties do not dispute that DeCay is currently entitled to cash-out his employee contributions, and the LSPRF does not suggest that DeCay's right to cash-out his contributions is in any way conditional.  Instead, the LSPRF asserts that the United States must apply for a refund of DeCay's contributions because the LSPRF may be subject to future liability if the United States is not forced to execute paperwork waiving DeCay's future pension benefits.  Louisiana law requires a pension beneficiary to apply for a reimbursement of his employee contributions, thereby extinguishing the employee's rights in the pension fund. *See* LA. REV. STAT. ANN. § 11:2175(C)(1) (1995) (stating that an eligible member "may apply for and obtain a refund of the amount of his contributions by making application on the form furnished by the fund . . . A refund automatically cancels all rights in the fund").

The United States argues that DeCay is adequately protected from future litigation by the FDCPA, and thus its failure to abide by Louisiana law is inconsequential.  Section 3206 of the FDCPA states:

> A person who pursuant to an execution or order issued under this chapter by a court pays or delivers to the United States . . . money or other personal property in which a judgment debtor has or will have an interest, or so pays a debt such person owes the judgment debtor, is discharged from such debt to the judgment debtor to the extent of the payment or delivery.

The United States thus asserts that it was not required to apply formally for a withdrawal of DeCay's employee contributions because § 3206 insulates the LSPRF from litigation and waives DeCay's rights to any future pension benefits.

17

No. 09-30218

We conclude that LSPRF has not sufficiently established that it is currently subject to a risk of double exposure upon payment of the $77,898;[11] accordingly, the matter is not ripe for our resolution at this point.

## V.  Conclusion

We conclude that the United States may garnish the defendants' retirement benefits to satisfy a criminal restitution order, but the CCPA limits the United States' authority to garnish Barre's pension benefits to twenty-five percent of his monthly payment.  Accordingly, we REVERSE the final orders of garnishment entered against Barre, AFFIRM as to DeCay, and REMAND the case to the district court for entry of final garnishment orders consistent with our holding in this case.

---

[11]  The United States clearly has the right to obtain the cash-out in question.  The fact that DeCay possessed the option to either cash-out his retirement account or wait and receive future monthly benefits allows the United States to seek an order compelling the LSPRF to cash-out DeCay's benefits.  *Cf. United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 724-26 (1985) (holding that the right to withdraw funds under state law is a right to property and the IRS may secure—and thus withdraw the funds—by executing a levy);  *Kane v. Capital Guardian Trust Co.*, 145 F.3d 1218, 1223 (10th Cir. 1998) ("In the notice of levy, the IRS exercised Kane's right to receive the cash value of his mutual fund shares when it directed [the garnishee] to liquidate the IRA and send it the cash proceeds.");  *United States v. Metro. Life Ins.*, 874 F.2d 1497, 1500 (11th Cir. 1989) ("[U]nder state law the taxpayer had the right to withdraw the full value of the annuity.  The issue is whether the right is sufficient to obligate the [garnishee] under section 6332(a) to surrender the funds subject to the withdrawal right to the IRS upon receipt of the notice of levy.  We hold that it is.").