**UNITED STATES of America,
Plaintiff,**

v.

**Ramona CUNNINGHAM, Defendant.**

No. 4:07–cr–08.

United States District Court,
S.D. Iowa.

June 11, 2012.

John S. Courter, William C. Purdy, United States Attorney, Des Moines, IA, for Plaintiff.

Chip J. Lowe, Howe Cunningham Lowe & Kelso PLC, Urbandale, IA, for Defendant.

## ORDER

ROBERT W. PRATT, District Judge.

Before the Court is a Motion to Quash Writ of Garnishment, filed by Ramona Cunningham ("Defendant") on March 3, 2012. Clerk's No. 320. This motion was filed in conjunction with Defendant's Objections to Garnishment of IPERS Benefits.[1] Clerk's No. 319–1. The Government filed a Resistance to the motion on March 15, 2012. Clerk's No. 324. On March 27, 2012, the Court held a hearing on the motion. Clerk's No. 326. The matter is fully submitted.

## I. FACTUAL AND PROCEDURAL HISTORY

Iowa Public Employees' Retirement System ("IPERS") is a public pension system that provides retirement benefits to various categories of covered Iowa state employees. *See* Hr'g Tr.[2] at 3–4. Both employers and employees fund the program by making regular contributions in accordance with a statutorily devised payment schedule. *Id.* at 6. As a state of Iowa employee, Defendant participated in IPERS between 1984 and 2006. *See id.* at 10. In July 2008, the Social Security Administration determined that Defendant was disabled and awarded her social security disability benefits. *See id.* at 20–21. This determination triggered Defendant's eligibility for IPERS disability retirement benefits. *See id.* at 16. Accordingly, since March 2009, Defendant has been receiving

---

1. Defendant twice filed pro se objections to the garnishment of her IPERS benefits, on February 17 and 27, 2012. Clerk's Nos. 315, 317. However, the Court permitted her to substitute the objections filed on March 3, 2012, for her previously filed objections. *See* Clerk's No. 321.

2. All references to the hearing transcript are to the unedited transcript provided to the Court by the court reporter.

monthly IPERS payments of $2,701.92.[3] See id. at 17. She will continue to receive monthly payments for the remainder of her life but will not receive any residual payment upon her death. See id.

On June 30, 2008, Defendant pled guilty to six counts of fraud relating to the misapplication of funds provided under the Federal Workforce Investment Act. See Clerk's No. 211. On December 15, 2008, Defendant was sentenced to 84 months incarceration and was later ordered to pay $1,799,066.00 in restitution. See Clerk's Nos. 239, 290. This amount is to be paid jointly and severally with her co-defendants. To date, $1,651,09.00 of the restitution is unpaid. Resistance at 1. Individually, Defendant has contributed $1,111.00 towards the restitution. Id.

On February 6, 2012, the Clerk of Court, pursuant to 28 U.S.C. § 3205(a), issued a Writ of Continuing Garnishment (hereinafter the "Writ") requiring IPERS to provide a description of any of Defendant's property in its possession, the amount of any payments it anticipated owing Defendant in the future, and directing IPERS to immediately withhold and retain, pending further order of Court, any property in which Defendant has a nonexempt interest for which IPERS is or could become indebted to her. See Clerk's No. 310. IPERS indicated that it anticipated paying Defendant $2,701.92 per month for the remainder of her life. See Clerk's No. 313. Defendant now seeks to quash this Writ. Clerk's No. 319, 320.

## II. APPLICABLE LAW AND ANALYSIS

■ This case requires the Court "to find a correct path through the labyrinth of federal execution statutes." *Paul Revere Ins. Group v. United States*, 500 F.3d 957, 961 (9th Cir.2007). Generally, the Government may enforce a restitution judgment using the same procedures that are available to enforce a civil judgment. See 18 U.S.C. § 3613(a). One such enforcement mechanism is garnishment. "A court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205(a). A garnishment order may only be terminated by satisfaction of the debt, exhaustion of the garnished property, or a court order quashing the writ of garnishment. See id. § 3205(c)(10).

■ Defendant raises five arguments for quashing the Writ. Specifically, Defendant claims that: (1) the Writ was issued in violation of § 3205(b)(1)(B) because the Government did not make a written demand on the debtor for payment of the debt more than thirty days prior to moving for garnishment; (2) Defendant's IPERS benefits are not subject to garnishment because both Iowa and federal law contain anti-alienation provisions applicable to pension plans; (3) failing to allow Defendant to exempt her IPERS benefits from garnishment, pursuant to 28 U.S.C. §§ 3001 and 3014, violates Defendant's Fifth Amendment right to equal protection; (4) failing to allow Defendant to exempt her IPERS benefits from garnishment as a pension payment, when other types of pension payments are exempt under 26 U.S.C. § 6334(a)(6), violates Defendant's Fifth Amendment right to equal protection;[4] and (5) her monthly IPERS

---

3. The Social Security Administration determined that Defendant's disability onset was April 23, 2006. Id. at 21. In addition to her monthly IPERS benefits, Defendant received a lump sum payment for the IPERS disability retirement benefits she was entitled to based on this onset date. See id. at 20.

4. For both equal protection arguments, Defendant also asserts that the relevant statutes

payments qualify as earnings and, as such, pursuant to 15 U.S.C. § 1673(a), the Government may only garnish twenty-five percent of those payments.[5] The Court will address each argument in turn.

### A. *Thirty Day Notice Period*

■ Defendant first argues that the Government failed to comply with the statutory mandate that it make a written demand for payment of the debt at least thirty days prior to applying for a writ of garnishment. *See* 28 U.S.C. § 3205(b)(1)(B) (requiring that the United States include in its application for a writ of garnishment "the facts that not less than thirty days has elapsed since demand on the debtor for payment of the debt was made and the judgment debtor has not paid the amount due"). However, the Government provided evidence that on July 29, 2010, and again on August 9, 2010, the Department of Justice sent notices to Defendant requesting payment of her restitution in full. *See* Ex. 1 (Clerk's No. 324–1). Both of these requests were made more than thirty days prior to January 27, 2012, the date that application for the Writ was made. Further, the Government's application for the Writ noted that a demand had been made for payment of the debt not less than thirty days from the date of the application and that the amount had not been paid. *See* Clerk's No. 309 at 1. Thus, the Writ was not issued in violation of § 3205(b)(1)(B).

### B. *Anti–Alienation Clauses*

Defendant next argues that the Government is prohibited from garnishing her IPERS benefits because of anti-alienation clauses in both state and federal statutes that pertain to pension plans such as IPERS. Defendant specifically cites Iowa Code § 97B.39, a statute establishing an individual's right to future payments from IPERS, which states in relevant part:

> The right of any person to any future payment under this chapter is not transferable or assignable, at law or in equity, and the moneys paid or payable or rights existing under this chapter are not subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law except for the purposes of enforcing child, spousal, or medical support obligations or marital property orders.

Defendant also claims that federal law prohibits the assignment or alienation of retirement benefits, noting that § 401(a)(13)(A) of the Internal Revenue Code (hereinafter "I.R.C." or, when referencing this statutory section, "ERISA") states: "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated."

■ Defendant is correct that, with the exception of several narrowly defined circumstances not present here, Iowa Code

---

violate her Fourteenth Amendment equal protection rights. However, the Fourteenth Amendment applies only to actions taken by a state. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n. 21, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987). There is no state action in this case; thus, the Fourteenth Amendment does not apply.

**5.** Defendant also argues that "the Writ and Answer must be quashed due to Defendant's

mental and physical disability." Objections to Garnishment of IPERS Benefits ¶ 6. However, beyond this statement, Defendant has provided no evidence regarding what these disabilities are or, more importantly, why they entitle Defendant to an order quashing the Writ. Accordingly, the Court will not quash the Writ based on Defendant's mental or physical disability.

§ 97B.39 prohibits garnishment of IPERS benefits. However, Iowa law is not applicable in this case because it is preempted by federal law. An order of restitution is enforceable through the procedures established in 18 U.S.C. § 3613.[6] *See* 18 U.S.C. §§ 3664(m)(1)(A)(i), 3613(f). Section 3613(a)(2) specifically states that 28 U.S.C. § 3014,[7] a federal statute generally permitting federal judgment debtors to apply state law property exemptions, is not applicable when the Government enforces a judgment for a criminal fine or restitution. In other words, § 3613(a)(2) prohibits the application of the anti-alienation clause contained in Iowa Code § 97B.39. To the extent that Iowa law conflicts with federal law governing garnishment of Defendant's IPERS benefits, Iowa law is preempted. *See* 28 U.S.C. § 3003(d) ("This chapter shall preempt State law to the extent such law is inconsistent with a provision of this chapter."); *United States v. DeCay*, 620 F.3d 534, 542–43 (5th Cir.2010) ("To the extent Louisiana law is inconsistent with [federal laws governing collection of restitution], Louisiana law is preempted.").

Similarly, the anti-alienation clause contained in I.R.C. § 401(a)(13)(A) does not prevent the Government from garnishing retirement benefits to satisfy a criminal judgment debt. The Government may enforce a restitution order "against all property or rights to property of the person" ordered to pay restitution, "[n]otwithstanding any other Federal law." 18 U.S.C. § 3613(a). The use of the phrase "notwithstanding any other Federal law" indicates that "Congress intended to override ERISA's anti-alienation provision and allow the government to reach defendants' ERISA-covered retirement plan benefits when enforcing criminal restitution orders." *United States v. Novak*, 476 F.3d 1041, 1049 (9th Cir.2007); *see also DeCay*, 620 F.3d at 540 ("We conclude that the language in § 3613(a) authorizing the United States to enforce a garnishment order against 'all property or rights to property' of the debtor, '[n]otwithstanding any other Federal law,' is sufficient to override the anti-alienation provision of the IRC."); *United States v. Hosking*, 567 F.3d 329, 335 (7th Cir.2009) (holding that

6. 18 U.S.C. § 3613 states in relevant part:

(a) **Enforcement.**—The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined, except that—

(1) property exempt from levy for taxes pursuant to [26 U.S.C. § 6334(a)(1) ], (2), (3), (4), (5), (6), (7), (8), (10), and (12) ... shall be exempt from enforcement of the judgment under Federal law;

(2) [28 U.S.C. § 3014] shall not apply to enforcement under Federal law; and

(3) the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. 1673) shall apply to enforcement of the judgment under Federal law or State law.

. . .

(f) **Applicability to order of restitution.**—In accordance with section 3664(m)(1)(A) of this title, all provisions of this section are available to the United States for the enforcement of an order of restitution.

7. 28 U.S.C. § 3014 states in relevant part:

(a) **Election to exempt property.**—An individual debtor may, in an action or proceeding under this chapter, elect to exempt property listed in either paragraph (1) or, in the alternative, paragraph (2).

. . .

(2)(A) any property that is exempt under Federal law, other than paragraph (1), or State or local law that is applicable on the date of the filing of the application for a remedy under this chapter at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of such application, or for a longer portion of such 180–day period than in any other place; . . . .

the ERISA anti-alienation clause does not prevent a district court from ordering payment from a qualified trust towards a restitution order, and noting "any property the IRS can reach to satisfy a tax lien, a sentencing court can also reach in a restitution order"). Accordingly, the anti-alienation clause contained in § 401(a)(13)(A) does not prevent the Government from garnishing Defendant's IPERS benefits to satisfy her outstanding restitution.

## C. Constitutional Challenges

 Defendant next argues that her right to equal protection under the Fifth Amendment is violated by certain federal statutes that arbitrarily differentiate between: (1) civil and criminal judgment debtors; and (2) certain types of pension plans. Defendant first claims that her equal protection rights are violated because the exemptions afforded a civil federal judgment debtor under 28 U.S.C. § 3014 are not applicable, pursuant to 18 U.S.C. § 3613(a)(2), to a criminal federal judgment debtor. Defendant also claims that 26 U.S.C. § 6334(a)(6), which creates exemptions for pension payments made to Medal of Honor recipients and in accordance with the Railroad Retirement Act and the Retired Serviceman's Family Protection Plan, but not for IPERS benefits, constitutes disparate treatment in violation of equal protection. The Government claims that the classifications created by these statutes do not involve similarly situated individuals, and to the extent that they do, there is a rational basis for the exemptions in question. The Fifth Amendment provides the same equal protection guarantee regarding federal legislation that the Fourteenth Amendment provides in regard to state legislation. See Adarand Constr., Inc. v. Pena, 515 U.S. 200, 217, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) (quoting Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) ("[T]his Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment.")). The Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such · as race, religion, or alienage, [courts] presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." Higgins v. Carpenter, 258 F.3d 797, 799 (8th Cir.2001) (quoting City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)). Thus, "in reviewing economic and social welfare regulations, a court must uphold the regulations if they bear a rational relation to a legitimate congressional purpose." Wal–Mart Stores, Inc. v. Knickrehm, 101 F.Supp.2d 749, 762 (E.D.Ark.2000) (citing Arkansas Pharmacists Ass'n v. Harris, 627 F.2d 867, 870 (8th Cir.1980)).

### 1. Disparate treatment of criminal judgment debtors.

 Defendant's first equal protection complaint is that there is no rational basis for permitting civil judgment debtors to apply state law property exemptions while denying the exemptions to criminal fine or restitution judgment debtors. See 18 U.S.C. § 3613(a)(2) (stating that the property exemptions to garnishment listed in 28 U.S.C. § 3014 are not applicable against enforcement of a criminal judgment). For

support, Defendant relies on *James v. Strange,* 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972). In *James,* the Supreme Court held a Kansas law that stripped indigent criminal defendants who were required to repay the state for the cost of their court appointed counsel of exemptions available to other judgment debtors violated equal protection. *Id.* at 141, 92 S.Ct. 2027. The Supreme Court stated that the Equal Protection Clause "imposes a requirement of some rationality in the nature of the class singled out" and that such rationality "is lacking where, as in the instant case, the State has subjected indigent defendants to such discriminatory conditions of repayment" not imposed on other judgment debtors. *Id.* at 140, 92 S.Ct. 2027 (internal quotations and citations omitted).

Although the statute in *James* dealt with indigent criminal defendants, the debts involved—and afforded disparate treatment—were all civil in nature. Here, the nature of debts afforded disparate treatment are, in fact, different. Restitution is part of a criminal sentence and is penal in nature. *See* 18 U.S.C. §§ 3553(a)(7), 3556; *see also United States v. Williams,* 128 F.3d 1239, 1241 (1997) (stating restitution under the Mandatory Victim Restitution Act ("MVRA") is a form of punishment). Unlike the Government's interest in recouping debts from civil judgments debtors, the MVRA "seeks primarily to assure that victims of a crime receive full restitution." *Dolan v. United States,* —— U.S. ——, 130 S.Ct. 2533, 2539, 177 L.Ed.2d 108 (2010). Providing fewer exemptions to restitution debtors is rationally related to the legitimate twin interests of making crime victims whole and punishing criminals. Thus, discriminating against criminal judgment debtors by denying them state law exemptions does not violate the equal protection guarantee of the Fifth Amendment.

2. *Exemptions for certain types of pension plans.*

■ Defendant's also notes that certain types of pension payments—namely, those made to retired members of the armed forces, recipients of the Medal of Honor, and those pursuant to the Railroad Retirement Act—may not be garnished by the Government, but other pension plans—such as Defendant's IPERS account—may be. Defendant argues that there is no rational basis for exempting these pension plans from garnishment while permitting garnishment of all other pension plans. The challenged regulation, 26 U.S.C. § 6334(a)(6), exempts various categories of assets from tax levy, and these exemptions are made available to restitution debtors through 18 U.S.C. § 3613(a)(1).

■ The Supreme Court "has declined to hold that narrow exemptions from a general scheme of taxation necessarily render the overall scheme invidiously discriminatory. For purposes of rational-basis review, the 'latitude of discretion is notably wide in . . . the granting of partial or total exemptions upon grounds of policy.'" *Nordlinger v. Hahn,* 505 U.S. 1, 16–17, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (quoting *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920) (other internal citations omitted)). Additionally, "[c]onsistent with equal protection principles, a legislature may deal with a problem one step at a time, . . . or it may select but one phase of a field of business activity for regulation while neglecting the others." *Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Dep't of Pub. Welfare,* 742 F.2d 442 (1984) (citing *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955)). Finally, courts should not find laws that draw economic classifications "unconstitutional unless in the light of the facts made known or

generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators." *Armour v. City of Indianapolis, Ind.,* —— U.S. ——, 132 S.Ct. 2073, 2080, 182 L.Ed.2d 998 (2012) (quoting *United States v. Carolene Prods. Co.,* 304 U.S. 144, 152, 58 S.Ct. 778, 82 L.Ed. 1234 (1938) (internal quotations omitted)). Given this presumption of constitutionality, the "burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Id.* (quoting *Heller v. Doe by Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (internal quotations omitted)).

■■■ Simply put, Defendant has not carried her burden by establishing that no rational basis exists for the exemptions in § 6334(a)(6). The exemptions related to military service appear to be rationally related to "a long standing policy of compensating veterans for their past contributions by providing them with numerous advantages. This policy has 'always been deemed to be legitimate.'" *Regan v. Taxation With Representation of Washington,* 461 U.S. 540, 551, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983) (citing *Personnel Adm'r v. Feeney,* 442 U.S. 256, 279, n. 25, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (footnote omitted)). As for Congress's decision to exempt pension payments pursuant to the Railroad Retirement Act, it is long established that "[w]here the public interest is served one business may be left untaxed and another taxed, in order to promote the one or to restrict or suppress the other." *Metro. Life Ins. Co. v. Ward,* 470 U.S. 869, 885, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985) (quoting *Carmichael v. S. Coal & Coke Co.,* 301 U.S. 495, 512, 57 S.Ct. 868, 81 L.Ed. 1245 (1937) (internal quotations omitted)). Just as Congress has the power to impose taxes on one industry but not another, it can also exempt from tax levy one industry—or in

this case, the employees of one industry—but not others. Further, Congress's decision to apply these existing exemptions to garnishment for restitution could be supported by a number of rational bases. For example, Congress may have sought to avoid costly strikes or slowdowns—a legitimate governmental interest—by providing a certain measure of economic security for railroad workers. Or, by adopting an already established system of debt collection to recoup outstanding restitution, Congress could have been seeking to expedite the return of property to crime victims by decreasing the administrative burden related to creating and implementing a new and unfamiliar set of exemptions. *Cf. Armour,* 132 S.Ct. at 2081 ("Ordinarily, administrative considerations can justify a tax-related distinction.") (citing *Carmichael,* 301 U.S. at 511–12, 57 S.Ct. 868). Whatever Congress's intention may have been, because Defendant has not shown that no plausible rational basis supports Congress's decision to make the exemptions in § 6334(a)(6) available to restitution debtors, this decision is not an equal protection violation.

### D. Limitation on Garnishment of Earnings

■■■ Finally, Defendant argues that, should the Court permit the Government to garnish her IPERS benefits, the Government should be limited to garnishing twenty-five percent of her monthly payments. The Consumer Credit Protection Act ("CCPA"), codified at 15 U.S.C. § 1673(a), and applicable to restitution orders through 18 U.S.C. § 3613(a)(3), states:

> the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

(1) 25 per centum of his disposable earnings for that week, or

(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage . . . ,

whichever is less.

"The term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a). Defendant claims that her monthly IPERS benefits are "earnings" and, thus, the Government is prohibited from garnishing more than twenty-five percent of these benefits.

The Government argues that payments made from a pension plan, as opposed to payments made into a pension plan, are not earnings. For support, the Government notes that a number of district court decisions have determined that such payments do not constitute earnings. However, the Government acknowledges that there is no controlling Eighth Circuit law on this issue and that recent decisions by the Fifth and Seventh Circuits have held that pension payments are "earnings."

The United States Supreme Court has stated that "earnings" under the CCPA "[a]re limited to 'periodic payments of compensation and (do) not pertain to every asset that is traceable in some way to such compensation.'" *Kokoszka v. Belford*, 417 U.S. 642, 651, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974) (quoting *In re Kokoszka*, 479 F.2d 990, 997 (2d Cir.1973)). Applying this reasoning, a number of district courts have found that payments from a pension fund to an employee are not "earnings" under the CCPA. *See United States v. Laws*, 352 F.Supp.2d 707, 713 (E.D.Va.2004) ("The plain language of § 1672(a) indicates that it is meant to protect funds as they pass from the employer to the employee, in whatever form that compensation takes, including payments by the employer into a pension or retirement program on behalf of the employee. It is not clear from the plain language of the statute to what extent such funds are protected once they leave the hands of the employer, even if the employee later receives the funds in periodic payments."); *United States v. Belan*, No. 2:07–x–50979, 2008 WL 2444496, *3 (E.D.Mich. June 13, 2008) ("[O]nce passed to a retirement account or annuity in the hands of the employee, the funds in the account or annuity are not 'earnings' under the CCPA, and thus not subject to the 25% cap, even if they are distributed in periodic payments—in other words, the distributions from the fund to defendant are not 'disposable earnings' under § 303."); *United States v. Blondeau*, No. 5:09–CR–00117, 2011 WL 6000499, *3 (E.D.N.C. Nov. 1, 2011) (same).

However, while these cases purport to rely on the plain language of § 1672(a) in concluding that payments *to* a pension fund are earnings, whereas payments *from* a pension fund are not, they misquote the relevant portion of the statute. *See De-Cay*, 620 F.3d at 544 n. 9 (noting that *Belan* and *Laws* mistakenly quote the statutory definition of earnings contained in 15 U.S.C. § 1672(a) as "periodic payments *to* a pension or retirement program" rather than the actual statutory language, which is "periodic payments *pursuant* to a pension or retirement program") (emphasis added to second quote). When the correct statutory definition of earnings is considered, the Court finds that it unambiguously includes payments made from a pension or retirement account to an individual. *See DeCay*, 620 F.3d at 544 (finding "the statutory language unambiguous," because "[t]he term 'pursuant to' is generally defined as 'in compliance with; in accordance with; under [or] . . . as authorized by . . . [or] in carrying out,'" and holding "that

the United States may garnish only twenty-five percent of [defendant's] monthly pension benefits" (quoting Black's Law Dictionary (8th ed.2004))); *United States v. Lee,* 659 F.3d 619, 621–22 (7th Cir.2011) (same). Thus, the Court finds that the Government may not garnish more than twenty-five percent of Defendant's IPERS benefits.

### E. *The All Writs Act*

 The Government requests, should the Court limit garnishment of Defendant's IPERS benefits to twenty-five percent, "that while the Defendant is incarcerated, the remaining amount of IPERS payments not subject to garnishment, be applied to the restitution ordered to be paid by the Defendant." Resistance at 12. Specifically, the Government argues that 18 U.S.C. § 3664(m)(1)(A)(i), the statutory provision that, by way of several statutory cross-references, ultimately authorizes garnishment of Defendants's IPERS account, is not the exclusive means of enforcing a restitution order. Instead, an order of restitution may be enforced "by all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(ii). Additionally, "[i]f a person obligated to provide restitution, or pay a fine, receives substantial resources *from any source,* including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed." *Id.* § 3664(n) (emphasis added). In light of these statutory provisions, the Government requests that while Defendant remains incarcerated, the Court issue an order, pursuant to the All Writs Act, directing IPERS to pay the Clerk of Court the portion of Defendant's IPERS benefits not subject to garnishment.

 The All Writs Act authorizes a federal court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages

and principles of law." 28 U.S.C. § 1651. It is a "legislatively approved source of procedural instruments designed to achieve the rational ends of law," and authorizes a district court "to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued." *United States v. New York Tel. Co.,* 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977) (internal quotations and citations omitted). Accordingly, a number of courts have issued restraining orders under the All Writs Act "restraining a restitution debtor from diverting or concealing assets to avoid paying restitution." *United States v. Yielding,* 657 F.3d 722, 727 (8th Cir.2011) (collecting cases). However:

> [w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although [the All Writs] Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.

*Pennsylvania Bureau of Corr. v. U.S. Marshals Serv.,* 474 U.S. 34, 43, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985).

Although restitution orders are generally enforced through the mechanisms established in 18 U.S.C. § 3613, *see* § 3664(m)(1)(A)(i), courts are further authorized to enforce restitution judgments by "all other available and reasonable means," *see* § 3664(m)(1)(A)(ii). Thus, because § 3613 is not the exclusive means by which a court is authorized to enforce a restitution judgment, the All Writs Act is an available alternative. Further, because the plain language of § 3664(n) requires an incarcerated defendant to apply the value

of substantial resources received from *any source* towards outstanding restitution, the Court finds that an order under the All Writs Act directing IPERS to pay the Clerk Of Court, rather than Defendant or her designee, the seventy-five percent of Defendant's monthly IPERS payments not subject to garnishment, is necessary and appropriate to effectuate both the provisions of § 3664(n) and the Court's previous restitution order. Accordingly, the Court will issue a separate order directing IPERS to disperse the portion of Defendant's monthly benefits not subject to garnishment to the Clerk of Court, so that they may be applied towards Defendant's restitution. This order will remain in effect until further order of the Court. However, upon release from prison, Defendant may move to re-open the order as the terms of § 3664(n) will no longer apply.

## III. CONCLUSION

For the reasons discussed herein, Defendant's Motion to Quash (Clerk's No. 319) is DENIED. The Court will enter a separate final order of garnishment consistent with the terms of this order, directing IPERS to garnish twenty-five percent of Defendant's monthly IPERS benefits. The Court will enter an additional order directing IPERS to pay the remaining portion of Defendant's monthly IPERS benefits to the Clerk of Court.

IT IS SO ORDERED.