# United States Court of Appeals
## For the First Circuit

No. 05-2897

UNITED STATES OF AMERICA,

Appellee,

v.

PHILLIP HYDE,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Boudin, Chief Judge,
Lynch and Lipez, Circuit Judges.

Leonard A. Frisoli, with whom Zaheer Samee was on brief for appellant.
Christopher R. Donato, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.
William R. Moorman, Jr., with whom Joseph J. Koltun and Craig & Macauley Professional Corporation were on brief for Board of Trustees of the Public School Teachers' Pension & Retirement Fund of Chicago.

August 7, 2007

**LIPEZ**, **Circuit Judge**.  This case requires us to decide whether a restitution order under the Mandatory Victims Restitution Act, codified in relevant part at 18 U.S.C. § 3613 ("MVRA"), allows the government to garnish the sale proceeds of a house that the debtor had attempted to exempt from the reach of creditors in a Chapter 7 federal bankruptcy proceeding.  Finding that the government has such authority, we affirm the district court's order allowing the government to enforce its writ of garnishment.

## I.

For nearly two decades, appellant Phillip Hyde, a Massachusetts resident, fraudulently received payments from his mother's pension fund, the Public School Teachers' Pension and Retirement Fund of Chicago ("the Fund").  Hyde's mother retired from the Chicago Public School System in 1968 and collected monthly pension checks until her death in 1982, at the age of eighty-two.  Thereafter, Hyde continued to receive and cash his mother's checks using various means of subterfuge to prevent the Fund from learning of her death.  By the time the Fund became aware of Hyde's scheme in 2000, Hyde had defrauded the Fund of $317,678.16.

The Fund sued Hyde for fraudulent conversion in May 2002 in federal district court in Massachusetts.  In the course of that proceeding, the court issued writs of attachment on behalf of the Fund, which the Fund duly recorded, creating a lien against Hyde's home.

-2-

While the litigation was still ongoing, Hyde filed a petition under Chapter 7 of the Bankruptcy Code on May 28, 2003. On Schedule C of that petition, Hyde claimed a homestead exemption of $300,000. See 11 U.S.C. §§ 522(b)(1) & (b)(3)(A); Mass. Gen. Laws ch. 188, § 1.[1] Pursuant to the Bankruptcy Code, property eligible for such an exemption "is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case," except in particular, listed circumstances. 11 U.S.C. § 522(c). Notable among these exceptions is a debt secured by a tax lien. See id. at § 522(c)(2)(B).

Shortly after Hyde sought Chapter 7 protection, the Fund filed a complaint in the bankruptcy court seeking a declaration that Hyde's debt to the Fund was non-dischargeable under the Bankruptcy Code. The bankruptcy court granted the Fund's motion,

---

[1] 11 U.S.C. § 522(b)(3)(A) extends federal bankruptcy protection to certain property exempt under state law, thereby incorporating the Massachusetts homestead exemption, which provides as follows:

> An estate of homestead to the extent of $500,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence. Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except [in certain listed exceptions].

Mass. Gen. Laws ch. 188, § 1.

-3-

entering judgment in favor of the Fund for $317,678.16 plus pre-judgment and post-judgment interest.  At about the same time, Hyde filed a motion in the bankruptcy court to avoid the Fund's lien on his home pursuant to 11 U.S.C. § 522(f), which allows a debtor to avoid the attachment of a lien on property protected by the homestead exemption.[2]  The Fund opposed the motion, but the bankruptcy court ruled in Hyde's favor in June 2004.

Meanwhile, on March 18, 2004 – roughly nine months after he filed for bankruptcy – Hyde was indicted on mail fraud charges stemming from his deception of the Fund.  Hyde entered into a plea agreement and was sentenced to one year and one day in prison to be followed by two years of supervised release; he was also ordered to pay restitution in the amount of $317,678.68 pursuant to the MVRA.  Although this sum was to be remitted to the government, the government would then transfer the money to the Fund.  The plea agreement also required Hyde to alert the U.S. Attorney to "any material change in [his] economic circumstances," and it barred

---

[2] In pertinent part, this section provides:

> [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5) [for a domestic support obligation.]

11 U.S.C. § 522(f)(1).

-4-

Hyde from transferring any assets without the U.S. Attorney's express written consent.

A few months after he was sentenced and after the bankruptcy court discharged all dischargeable debts (which did not include his debt to the Fund), Hyde sold his residence for $575,000 in August 2005, without providing notice to the U.S. Attorney's office or the Fund. After settling various fees and voluntarily distributing some of the proceeds to other creditors, Hyde netted roughly $122,000.

Upon learning of the sale, both the Fund and the United States took action. The Fund petitioned the Middlesex County Superior Court, seeking to enjoin the transfer of any proceeds to Hyde and requesting a "trustee process attachment" on the funds. The court granted both the injunction and the attachment. The United States filed a motion in federal district court seeking a writ of garnishment in an attempt to obtain the sale proceeds in partial satisfaction of Hyde's restitution obligation. The writ was issued.

Hyde then took steps to preserve his homestead exemption. He filed a motion with the bankruptcy court seeking a declaration that the sale proceeds were exempt. In addition, he filed a claim of exemption in the district court and requested that it suspend action until the bankruptcy court issued its ruling. The United States opposed this claim, arguing that, under the MVRA, the

-5-

restitution order could be enforced against Hyde's property regardless of how the bankruptcy court ruled on the homestead exemption because: (1) the MVRA supersedes the homestead exemption embedded within the Bankruptcy Code; and (2) even if it did not, the restitution order arose after Hyde filed for bankruptcy, thus removing it from the protection afforded by 11 U.S.C. § 522(c), which only protects pre-petition debts.

Instead of the district court deferring to the bankruptcy court, as Hyde had requested, the bankruptcy court deferred to the district court. The bankruptcy court noted that even if it ruled, as a matter of Massachusetts law, that the homestead exemption extended to proceeds of the sale of the home, this ruling would be pointless if the district court determined that the restitution order is a post-petition order unaffected by 11 U.S.C. § 522(c) and that the United States may enforce that order by garnishing the sale proceeds.

Shortly thereafter, the district court ruled that: (1) the restitution order resulting from the criminal case "creates an entirely new obligation owed to the United States unaffected by the Debtor's homestead exemption and 11 U.S.C. 522(c)"; and (2) the United States could enforce the garnishment order.

On appeal, Hyde argues that he retains the right to a homestead exemption even after converting his home to cash, and he further contends that the exemption trumps the government's

authority to garnish the sale proceeds of his home to satisfy his obligation under the MVRA.

## II.

Because the only question posed by this case is a question of law concerning the interplay between the Massachusetts homestead exemption, the Bankruptcy Code and the MVRA, our review is plenary. United States v. Stearns, 387 F.3d 104, 108 (1st Cir. 2004). Hyde argues that the district court committed a legal error in allowing the government to garnish the sale proceeds from his home. He contends that the protection from creditors afforded by the Massachusetts homestead exemption makes those funds unreachable for restitution under the MVRA.

We note at the outset that there is reason to doubt that the proceeds at issue are covered by the Massachusetts homestead exemption. Whether the protection extends beyond ownership of the residence itself to the proceeds upon sale is unresolved in Massachusetts case law.[3] That issue, in turn, may depend upon whether the sale – which occurred two days before a scheduled foreclosure proceeding – would be deemed voluntary or involuntary.[4]

---

[3] Although the parties cite some competing authorities, they agree that no Massachusetts court has yet ruled squarely on this issue.

[4] While Massachusetts courts have not ruled on this issue, the parties cite cases suggesting that states that extend homestead exemption to sale proceeds often limit that extension to involuntary sales. Compare, e.g., In re Miller, 246 B.R. 564, 566 (Bankr. E.D. Tenn. 2000) (explaining that the homestead exemption

We need not explore the reach of the exemption, however, because the sale proceeds are not protected from a restitution order issued under the MVRA whether or not the exemption applies.[5]

The MVRA specifically provides:

> The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law (including section 207 of the Social Security Act [42 U.S.C. § 407]), a judgment imposing a fine may be enforced against all property or rights to property of the person fined.
>
> ***
>
> In accordance with section 3664(m)(1)(A) of this title . . . all provisions of this section are available to the United States for the enforcement of an order of restitution.

18 U.S.C. § 3613(a), (f).[6]

_____

under Tennessee law extends to sale proceeds of an involuntary conversion of property), with In re Englander, 95 F.3d 1028, 1032 (11th Cir. 1996) (noting that Florida law extends homestead exemption to proceeds of a voluntary sale if reinvestment in a new homestead is intended).

[5] As we have noted, the district court ruled against Hyde because the restitution order resulting from the criminal case "creates an entirely new obligation owed to the United States unaffected by the Debtor's homestead exemption and 11 U.S.C. § 522(c)." By choosing to base our ruling on the scope of the MVRA rather than the ground relied on by the district court, we are not suggesting that the ground for decision in the district court was erroneous. We simply prefer to base our ruling on this alternative ground.

[6] The law contains three exceptions which Hyde concedes do not apply to his case. See 18 U.S.C. § 3613(a).

Read together, these sections allow the government to enforce a judgment that includes restitution against "all property or rights to property of the person fined." In addition, § 3613(c) specifies that "an order of restitution . . . is a lien in favor of the United States on all property and rights to property of the person fined as if the liability . . . were a liability for a tax assessed under the Internal Revenue Code of 1986."

In effect, then, the government possessed a tax lien against appellant's property, triggering one of the explicit exceptions to the Bankruptcy Code's protection afforded to a homestead exemption. See 11 U.S.C. § 522(c)(2)(B). Hyde does not argue that the state exemption prevails over federal law and, indeed, such a claim would be unavailing.[7] However, Hyde attempts to cloak the state exemption in federal bankruptcy policy, claiming that the MVRA must yield to the "fresh start" policy behind the Bankruptcy Code.

Although Hyde is correct that we must look to congressional intent in the face of an apparent conflict between two federal statutes, see, e.g., Bank of New Eng. Old Colony, N.A.

---

[7] It is well established that the Supremacy Clause "provides the underpinning for the Federal Government's right to sweep aside state-created exemptions" in the face of a tax liability. United States v. Rodgers, 461 U.S. 677, 701 (1983); see also Herndon v. United States, 501 F.2d 1219, 1222 (8th Cir. 1974); United States v. Heffron, 158 F.2d 657, 659 (9th Cir. 1947); Shambaugh v. Scofield, 132 F.2d 345, 346 (5th Cir. 1942).

-9-

v. Clark, 986 F.2d 600, 603 (1st Cir. 1993), he is mistaken in his contention that Congress has not already spoken to the issue. The MVRA's language is unambiguous: the MVRA's provisions apply "[n]otwithstanding any other Federal law." 18 U.S.C. § 3613(a). See Cisneros v. Alpine Ridge Group, 508 U.S. 10, 18 (1993) ("[I]n construing statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section.") (collecting circuit court cases). Other courts have also interpreted the MVRA's "notwithstanding" clause to supersede conflicting federal statutes. See, e.g., United States v. Novak, 476 F.3d 1041, 1047 (9th Cir. 2007) (en banc) (MVRA provisions supersede the non-alienation provisions of ERISA); United States v. Irving, 452 F.3d 110, 126 (2d Cir. 2006) (same). Moreover, here the MVRA language invokes a Bankruptcy Code exception by equating a restitution order under the MVRA to a tax lien. Thus, neither Massachusetts law nor the Bankruptcy Code restricts the reach of the MVRA's clear language.[8]

---

[8] The only other courts to have considered the relationship between the MVRA and a state homestead exemption agree. See United States v. Lampien, 89 F.3d 1316, 1321 (7th Cir. 1996) ("[I]f the Wisconsin homestead exemption applies to . . . prevent any part of the proceeds from the sale of her home from being used to satisfy her restitution obligation, the homestead exemption is void under the Supremacy Clause."); United States v. Jaffe, 314 F. Supp. 2d 216, 227 (S.D.N.Y. 2004) ("Florida homestead law will not protect him with respect to his duty to provide restitution to his victim [under the MVRA]."). Lampien was decided under the Victim and Witness Protection Act, 18 U.S.C. § 1033. The relevant sections of

-10-

Hyde also argues for the first time on appeal that the district court erred in allowing the government's writ of garnishment because that garnishment runs expressly counter to the criminal judgment against him. The judgment specifically provided that Hyde pay "restitution on a schedule to be determined by the probation department, during the supervised release period," while the garnishment allows the government to reach these sale proceeds before Hyde's supervised release begins. We generally review arguments raised for the first time on appeal only for plain error alone. See United States v. LeMoure, 474 F.3d 37, 43 (1st Cir. 2007). Error, let alone plain error, is wholly absent here, where the court's statutory authority to adjust a defendant's payment schedule is explicit:

> A judgment for a fine which permits payments in installments shall include a requirement that the defendant will notify the court of any material change in the defendant's economic circumstances that might affect [his] ability to pay the fine. Upon receipt of such notice the court may . . . adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

18 U.S.C. § 3572(d)(3).[9]

---

the two statutes are identical.

[9] Although this statutory provision refers to a "fine" rather than an order of restitution, the MVRA provides that "all provisions of [§ 3664(m)(1)(A)] are available to the United States for the enforcement of an order of restitution," 18 U.S.C. § 3613(f), and § 3664(m)(1)(A) provides that an order of restitution may be enforced in the same manner as a fine.

## III.

For the reasons set forth above, we affirm the district court's order that the United States may enforce its restitution order by garnishing the proceeds from the sale of Hyde's residence.

<u>So ordered.</u>