# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2449

_____

United States of America

*Plaintiff - Appellee*

v.

Joyce Ashcraft

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: June 5, 2013
Filed: October 9, 2013

_____

Before LOKEN, MELLOY, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Joyce Ashcraft appeals the district court's order denying her objection to the garnishment of her disability payments. The district court ruled Ashcraft's disability payments were not "earnings" within the meaning of the Consumer Credit Protection Act (the "Act"), 15 U.S.C. § 1673(a), which limits garnishment of "earnings." We reverse and hold Ashcraft's disability payments are "earnings" within the meaning of

the Act.  We grant the government's motion to strike and deny all other pending motions.

I.

In 2004, Ashcraft pleaded guilty to several criminal charges.  She was sentenced to a term of imprisonment and to restitution.  She was released from custody in November 2012.  At some time prior to her incarceration, she worked for Amana Refrigeration.  Amana provided long-term disability insurance to its employees through Principal Life Insurance Company ("PLIC").  Ashcraft's employment with Amana aggravated a medical condition, rendering her unable to work; as a result, Ashcraft receives disability payments from PLIC.  Those payments will continue until she reaches the age of sixty-five in November 2016.[1]  The government does not dispute that the disability insurance providing Ashcraft's current disability payments was provided by Amana in the course of Ashcraft's employment.

In February 2012, the government sought to garnish Ashcraft's disability payments pursuant to her restitution sentence.  Ashcraft objected.  Ashcraft argued her disability payments are "earnings" within the meaning of the Act and are thus subject to the Act's limitations on garnishment.

The district court ruled Ashcraft's disability payments are not "earnings" within the meaning of the Act and overruled her objection to garnishment.  Ashcraft appealed.  On appeal, Ashcraft argues that the language of the Act is inclusive, allowing for nonenumerated "periodic payments" to fall within the definition of "earnings," and that the disability payments are the kind of periodic payments

---

[1] Ashcraft stated and the district court found that Ashcraft's disability payments would be reduced once she was released from custody because she would begin receiving social security benefits.  However, the amount of the disability payments is not at issue on this appeal.

intended to be protected by the Act. Ashcraft argues that her disability insurance was part of her compensation from Amana and that her disability payments are considered wages by the IRS. The government argues that Ashcraft's disability payments are not "compensation paid or payable for personal services" as the Act requires and that the Act does not expressly include disability payments within the definition of "earnings."[2]

## II.

We review the district court's interpretation of a statute de novo. Planned Parenthood Minn., N.D., S.D. v. Rounds, 686 F.3d 889, 893 (8th Cir. 2012). To interpret a statute, we examine both the clause at issue and the statute as a whole, as well as "the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature." Kokoszka v. Belford, 417 U.S. 642, 650 (1974). Where the statute's language is unambiguous, we interpret the statute according to its plain language. United States v. Allmon, 702 F.3d 1034, 1036 (8th Cir. 2012).

---

[2] The government argues we must decide whether Ashcraft's disability payments are "earnings" under the Act or "property" under the Federal Debt Collection Practices Act, while Ashcraft argues that the categories of "earnings" and "property" are not mutually exclusive. For purposes of this appeal, we need only determine whether Ashcraft's disability payments are "earnings"; we do not determine whether they are or may also be "property."

Additionally, to the extent the government argues it is entitled to collect restitution from Ashcraft free from the Act's restrictions based on the terms of Ashcraft's plea agreement, that argument is meritless. The government itself admits in its brief that its general garnishment powers are restricted by the Act. Further, to the extent Ashcraft argues the government should not be permitted to garnish her disability payments merely because she has made other restitution payments, that argument is also meritless.

The Act states, in relevant part:

> (a)  The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

> (b) The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld . . .

15 U.S.C. § 1672.

> (a) [T]he maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

> > (1) 25 per centum of his disposable earnings for that week, or

> > (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage . . . in effect at the time the earnings are payable,

> whichever is less.

15 U.S.C. § 1673.

Whether disability payments are "earnings" within the meaning of the Act is an issue of first impression for our court, and neither party points to a case from any of our sister circuits offering a ruling on the present issue.  While several courts have previously interpreted the meaning of "earnings" under the Act, most of those courts

considered whether pension payments and retirement savings constitute "earnings"[3]; they did not address the Act's applicability to disability payments. However, two prior cases are particularly relevant, and we introduce those cases before moving to our analysis.

First, courts interpreting the Act's definition of "earnings" rely heavily on Kokoszka v. Belford, 417 U.S. 642 (1974). In Kokoszka, the Supreme Court analyzed both the Act and the Bankruptcy Act and determined that income tax refunds did not constitute "earnings." Quoting with approval the Second Circuit's holding that "earnings" did not include "every asset that is traceable in some way to such compensation," the Kokoszka Court stated:

> [T]he Consumer Credit Protection Act sought to prevent consumers from entering bankruptcy in the first place. . . . There is every indication that Congress, in an effort to avoid the necessity of bankruptcy, sought to regulate garnishment in its usual sense as a levy on periodic payments

---

[3] Although the Act expressly includes payments pursuant to a pension or retirement program, "district courts around the country have divided over whether monthly pension-benefit payments constitute 'earnings' under the [Act]." United States v. DeCay, 620 F.3d 534, 543–44 (5th Cir. 2010) (describing the split) (citing United States v. Belan, No. 2:07-x-50979, 2008 WL 2444496, at *3 (E.D. Mich. June 13, 2008) ("[O]nce passed to a retirement account or annuity in the hands of the employee, the funds in the account or annuity are not 'earnings' under the [Act]."), and United States v. McClanahan, No. 3:03-00053, 2006 WL 1455698, at *3 (S.D. W. Va. May 24, 2006) ("[U]nder clear statutory language . . . the Government may garnish only 25% of the Defendant's pension.")). In United States v. Cunningham, a district court within our circuit recently held that the Act's garnishment limitations apply to pension payments. 866 F. Supp.2d 1050, 1060 (S.D. Iowa 2012) (concluding that the Act's plain language "unambiguously includes payments made from a pension or retirement account to an individual."). However, because the Act expressly includes "payments pursuant to a pension or retirement program," 15 U.S.C. § 1672(a), those cases deal with a different question than the one Ashcraft's case presents.

of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis.

Id. at 651.[4]

Second, although the parties do not point to any federal district court or court of appeals opinion addressing the present question, In re Conway, No. 03-11200-MAM-7, 2003 Bankr. LEXIS 1988 (Bankr. S.D. Ala. Sept. 9, 2003) offers relevant analysis.  In Conway, a bankruptcy court concluded a debtor's disability insurance payments were "earnings":

---

[4] The Supreme Court noted that the legislative history of the Act "fully support[s]" the view that "earnings" are "limited to periodic payments of compensation and [do] not pertain to every asset that is traceable in some way to such compensation."  Kokoszka, 417 U.S. at 651 (second alteration in original).  Some courts interpret this to mean that only periodic payments, as opposed to lump sums, can constitute "earnings."  See, e.g., Pallante v. Int'l Venture Invs., Ltd., 622 F. Supp. 667, 669 (N.D. Ohio 1985) (relying on Kokoszka for the proposition that "[t]he determinative factor in deciding whether severance pay is subject to the statutory limitations is whether the monies are received in periodic payments. . . .  It is when payments are periodic that severance pay is intended to provide income similar to current earnings." (citation and internal quotation marks omitted)).  The Court's discussion of "periodic" occurs during an analysis of the legislative history.  The statute Congress passed does not restrict itself to periodic payments.  It includes payments "denominated as wages, salary, commission, bonus, or otherwise," contemplating a wide variety of payment structures.  Indeed, bonuses (and payments in the "otherwise" category) are frequently not periodic.  Congress defines the only test as whether the payment is "compensation paid or payable for personal services." 15 U.S.C. § 1672(a).

In any event, to the extent the periodic nature of the payments helps to establish them as "compensation paid . . . for personal services," Ashcraft's disability payments were "periodic payments of compensation needed to support the wage earner and [her] family on a week-to-week, month-to-month basis." Kokoszka, 417 U.S. at 651.

-6-

"Earnings" under the federal statute include "periodic payments pursuant to a pension or retirement plan." 15 U.S.C. § 1672(a). Disability payments serve the same purpose and, like retirement or pension payments, are replacement income. The payments are taxed like wages. The payments are an employee benefit like a pension . . . . [Debtor's employer] paid all costs of the plan . . . [and] [t]he plan states that "the long term disability plan provides financial protection for you by paying a portion of your income while you are disabled . . . ." The plan, as this language and the employer funding make clear, is an income replacement vehicle for [ ] employees. As a benefit of employment, this Court concludes it is "other compensation" to employees paid to them as a part of their earnings for personal services performed in the past.

Id. at *20–22. See also Rousey v. Jacoway, 544 U.S. 320, 331 (2005) (identifying various types of benefit plans, including "disability, illness, or unemployment benefit[s]" and noting that "[t]he common feature of all of these plans is that they provide income that substitutes for wages earned as salary or hourly compensation.").

We turn now to our analysis. Based on the Act's plain language, Ashcraft's disability payments constitute "earnings." By defining "earnings" as "compensation paid or payable for personal services, *whether denominated as* wages, salary, commission, bonus, or otherwise," the Act prioritizes the character of the payment over its label. Thus, although Ashcraft's evidence that the IRS lists her disability payments as wages may support her claim, whether or not the disability payments are labeled as wages is not the central issue; the central issue is whether the disability payments are "compensation paid or payable for personal services." We hold they are.

Ashcraft receives the disability payments through her former employer. They are payments designed to function as wage substitutes; they are not merely "traceable in some way" to Ashcraft's compensation, Kokoszka, 417 U.S. at 651, but are themselves a direct component of the compensation Amana provided to Ashcraft in

return for the personal services Ashcraft rendered to Amana. They are "compensation paid or payable for personal services" that are "denominated . . . otherwise" by her former employer as disability payments rather than as wages or salary.

The government's argument that Ashcraft receives the payments precisely because she cannot render "personal services" due to her disability incorrectly focuses on the time the payments are received rather than the character of the payments. Simply because the disability payments are delayed—simply because Amana received Ashcraft's personal services before Ashcraft began receiving her disability payments—does not take the payments out of the category of compensation. The disability payments constitute "'other compensation' to employees paid to [her] as a part of [her] earnings for personal services performed in the past." Conway, 2003 Bankr. LEXIS 1988, at *22.

## III.

For the reasons stated above, we conclude Ashcraft's disability payments are "earnings" within the plain meaning of the Act and are therefore subject to the Act's limitations on garnishment.

_____