In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2743

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GARY L. FRANCE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:00-cr-01061-1 — **Charles R. Norgle**, *Judge.*

ARGUED JANUARY 23, 2015 — DECIDED APRIL 7, 2015

Before WOOD, *Chief Judge*, and KANNE and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. In 2002, Dr. Gary France was ordered to pay $800,000 in restitution to victims of a fraudulent billing scheme he committed. By 2014, however, France had paid less than $11,000 toward that amount, so the government moved under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3613(a), to garnish monthly payments of $16,296 from France's privately

purchased disability insurance policy. France maintains that these payments are at least partially exempt from garnishment, and his ex-wife, Theresa Duperon, seeks to exempt a portion of the payments that she receives for child support. The district court allowed the government to garnish the entire amount. We affirm.

## I.    BACKGROUND

In the mid-1990s, France owned and operated a dental business in Chicago. During this time, he engaged in a lucrative scheme to fraudulently bill insurers for employees of the City of Chicago and the Chicago Transit Authority. For that scam, he pleaded guilty in April 2002 to mail fraud. *See* 18 U.S.C. § 1341. Meanwhile, in 1996, France closed his solo dental practice after being injured in a car accident and started collecting monthly benefits from a disability income policy he had purchased through his dental business. In 1999, he agreed to give a portion of these monthly payments, for a limited time, to Western United Life Insurance Company in exchange for a lump sum of more than $300,000. He then transferred this money into various accounts in the names of other people, including Duperon (his then-wife), before filing a Chapter 7 bankruptcy petition in early 2000. He failed to disclose the lump sum payment or subsequent transfers in the bankruptcy petition and in fact made affirmative declarations concealing their existence. For that reason, at the same time he pleaded guilty to mail fraud, France pleaded guilty to knowingly making a false declaration under penalty of perjury. *See* 18 U.S.C. § 152(3).

In August 2002, the district court sentenced France to a total prison term of 30 months and ordered him to pay $800,000 in restitution to the City of Chicago Law

Department and the Chicago Transit Authority. In September 2002, the government recorded notice of this lien in California, where France had relocated. Two months later, the trustee appointed in France's bankruptcy proceedings obtained an order giving the trustee title to ongoing payments from the disability insurance. (The Chapter 7 case began with the United States trustee serving as trustee for the estate, but later, in 2002, a private attorney was appointed as trustee, as is standard practice. *See* 28 U.S.C. § 586(a)(1) (requiring United States trustee to maintain a panel of private trustees for cases filed under Chapter 7); United States Trustee Program, About the Program, http://www.justice.gov/ust/eo/ust_org/index.htm visited Mar. 13, 2015).)

In July 2003, France and Duperon divorced and reached a marital settlement under which Duperon was to receive payments for child support through 2019 from the disability insurance payments. The payments would increase up to $7,000 per month. A California court approved the settlement in August 2003.

In February 2004, France's insurance company filed an interpleader action in California to resolve conflicting claims to the insurance proceeds from the bankruptcy trustee, France, France's sister, and Duperon. In March 2005, these parties reached a settlement agreement, which the bankruptcy court approved, purporting to control all other judgments in regard to the insurance policy. The settlement did not mention the restitution lien from France's criminal case, and it appears that the bankruptcy trustee was never notified of it.

In May 2013, the government filed in France's criminal case in the Northern District of Illinois citations to discover assets in accordance with Illinois law that were directed at France, his insurer, and Duperon. *See* 735 ILCS 5/2-1402 (authorizing procedure for creditor to prosecute supplementary proceedings to discover assets). France moved to quash the citation primarily on the basis that his disability payments were exempt from garnishment under California law. But the insurance company responded to the citation by informing the government that it was distributing monthly payments of $9,296 to France and $7,000 to Duperon, for a total of $16,296. France's insurer also began withholding the $9,296 that had been going to France.

In February 2014, based on the information from the insurance company, the government moved to garnish the entire monthly distributions under § 3613(a), which provides as follows:

> **(a) Enforcement.—** The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined, except that—
>
> **(1)** property exempt from levy for taxes pursuant to section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the

Internal Revenue Code of 1986 shall be exempt from enforcement of the judgment under Federal law;

(2) section 3014 of chapter 176 of title 28 shall not apply to enforcement under Federal law; and

(3) the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. 1673) shall apply to enforcement of the judgment under Federal law or State law.

In response to the government's motion, France's insurer began withholding Duperon's payments in addition to France's, and France and Duperon asserted that the payments—or at least a portion of them—were exempt from garnishment. In addition to asserting state law exemptions, France argued that the payments were partially exempt under § 3613(a)(3) as "earnings" under the Consumer Credit Protection Act (CCPA), which sets a ceiling of 25% per week for garnishment of "disposable earnings." 15 U.S.C. § 1673(a)(1). He emphasized that the Eighth Circuit recently held that payments from private disability insurance constitute "earnings" under the CCPA in *United States v. Ashcraft*, 732 F.3d 860 (8th Cir. 2013). Duperon additionally argued that the government should be estopped from undermining the interpleader settlement involving the bankruptcy trustee.

The district court rejected France's and Duperon's arguments and ordered garnishment of the entire disability payments. The court noted that France had "arguably waived his right to claim the CCPA statutory exemption" by

not asserting it when first served with the citation for discovery of assets. The court concluded that, in any event, the disability payments were not compensation paid for personal services, and thus did not fall under the CCPA's definition of earnings. *See* 15 U.S.C. § 1672(a). The court distinguished *Ashcraft* on the grounds that, unlike the defendant there, "France was self-employed," and thus the payments were "not a benefit of his employment." The court also concluded that state law exemptions did not apply because the government was proceeding under federal law.

As for Duperon, the district court acknowledged that 26 U.S.C. § 6334(a)(8), which is incorporated into § 3613(a)(1), exempts payments for support of minor children if ordered by a court judgment "entered prior to the date of levy." But the court reasoned that, assuming Duperon had standing to assert the exemption, the government's restitution lien was superior to her interest, having been entered well before the couple's divorce. Moreover, the court noted that France no longer had a minor child because the couple's daughter had turned 19. The court also rejected Duperon's estoppel argument, concluding that the government was not bound by the results of the California litigation because it was unaware of those proceedings, and that the bankruptcy trustee had acted as a representative of the estate, not the government.

The district court also noted that, at that time, France had paid only $10,223.04 toward the restitution judgment. At argument, the government reported that, as a result of the garnishment order, it had already recovered almost $250,000. At that rate, counsel stated, the restitution judgment will be paid in three to four years.

## II. DISCUSSION

France's lead argument on appeal is that the disability payments are exempt from garnishment because they are "earnings" under § 1672(a). The district court observed that France had "arguably" waived this argument by not asserting it when the government first sought to discover his assets, but we are not persuaded that waiver is appropriate here. As France notes, and the government does not dispute, the CCPA contains no requirement that a debtor affirmatively assert an exemption, and in fact, § 1673(c) states that "[n]o court … may make, execute, or enforce any order or process in violation of this section," suggesting the exemption is automatic. Moreover, the only authority the district court cited in support of waiver, *Guess?*, *Inc. v. Chang*, 912 F. Supp. 372, 379 (N.D. Ill. 1995), is distinguishable because it involved an exemption under state law, not the MVRA or CCPA.

Moving to the merits, we start with the text of the MVRA, which incorporates the cap on garnishment of "disposable earnings" found in § 1673 into a list of exemptions from garnishment. 18 U.S.C. § 3613(a)(3). "Disposable earnings" is defined in § 1672(b) as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." 15 U.S.C. § 1672(b). "Earnings" is defined as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." *Id.* § 1672(a).

Based on that language, we held in *United States v. Lee*, 659 F.3d 619, 621 (7th Cir. 2011), that the government may

not garnish more than 25% of the monthly payments from a defendant's 401(k) and defined benefit pension. The Fifth Circuit has decided likewise. *United States v. DeCay*, 620 F.3d 534, 544 (5th Cir. 2010); *compare United States v. Laws*, 352 F. Supp. 2d 707, 714 (E.D. Va. 2004) (holding that retirement annuity payments that had already passed to the debtor were not earnings). We have never, however, had occasion to address whether the CCPA, as incorporated into the MVRA, also covers payments made pursuant to a privately purchased disability policy.

As recognized by the district court, the only appellate decision to squarely address this issue is the Eighth Circuit's decision in *Ashcraft*. There, the court emphasized that the Supreme Court, in *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974), endorsed the view that "earnings" as defined in the CCPA are "limited to periodic payments of compensation and do not pertain to every asset that is traceable in some way to such compensation." *Id.* (alterations and quotations omitted). Citing that interpretation, the Eighth Circuit concluded that payments made pursuant to a disability-benefits plan purchased by Ashcraft's former employer were "earnings" because they were "designed to function as wage substitutes" and thus were "not merely 'traceable in some way' to Ashcraft's compensation, but [were] themselves a direct component of [her] compensation." *Ashcraft*, 732 F.3d at 864.

The district court concluded that France, unlike Ashcraft, was "self-employed," but that description is not truly accurate: France incorporated his dental business, and his insurance policy, like Ashcraft's, was purchased through a corporate entity. France's policy *is* distinguishable from

Ashcraft's for another reason: unlike Ashcraft's insurance, France's policy essentially functioned as business-loss insurance because his business depended entirely on his ability to perform dental work and his insurance covered only his ability to perform that occupation. We are not convinced, however, that this distinction provides a principled basis for distinguishing the reasoning in *Ashcraft* from the situation here, since the disability payments are still arguably designed to function as a wage substitute.

The government seems to recognize that the district court's reason for distinguishing *Ashcraft* is problematic and thus argues that, even if *Ashcraft* is on point, it was wrongly decided. The government urges us to examine how the CCPA applies *in the context of* § 3613(a), noting that, although *Ashcraft* technically involved the MVRA, the Eighth Circuit's decision did not address interpretation of the list of exemptions in § 3613(a) and, in fact, failed to even cite that provision. This oversight is critical, the government argues, because "[i]n drafting § 3613, Congress deliberately included and excluded various kinds of disability income, and the exclusion of private disability cannot be considered an accident or oversight that should be judicially corrected."

We agree. Section 3613(a)(1), which selectively incorporates exemptions from the Internal Revenue Code, makes express exceptions for two specific types of disability payments, workmen's compensation, 26 U.S.C. § 6334(7), and military-related disability payments, *id.* § 6334(10), without mentioning private disability insurance. Further, the list in § 3613(a)(1) *does not* include § 6334(11), which exempts certain forms of public assistance, including Social Security disability payments. Although somewhat "beleaguered," the

canon of *expressio unius est exclusio alterius*—"the expression of one thing suggests the exclusion of others"—remains a compelling interpretive guide when "'the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence.'" *Exelon Generation Co. v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO*, 676 F.3d 566, 571 (7th Cir. 2012) (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)). Furthermore, "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980); *see In re Robinson*, 764 F.3d 554, 562 (6th Cir. 2014) (applying this concept to § 3613(a)). Here, where Congress elected to incorporate the exemptions for certain forms of disability payments and not others, we think that a plain reading of the MVRA leads to the conclusion that it does not cover France's disability payments.

This reading is further supported by the opening paragraph of § 3613(a), which states that the statute operates "[n]otwithstanding any other Federal law (including section 207 of the Social Security Act)." According to the Supreme Court, "in construing statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993). For that reason, several circuits have read § 3613(a) broadly as superseding other statutory provisions safeguarding a defendant's assets. *See, e.g., Robinson*, 764 F.3d at 561–62 (collecting cases and holding that MVRA supersedes

bankruptcy stay); *United States v. Novak,* 476 F.3d 1041, 1047 (9th Cir. 2007) (en banc) (holding that MVRA supersedes ERISA's non-alienation provisions); *United States v. Hyde,* 497 F.3d 103, 108 (1st Cir. 2007) (holding that MVRA supersedes Bankruptcy Code provisions). This case law underscores the importance of not adopting an expansive reading of the exemptions to § 3613(a).

Furthermore, we note that not only did *Ashcraft* fail to examine the MVRA, it also, in our view, relied on *Kokoszka* for a proposition that decision does not support. In *Kokoszka,* the Supreme Court *limited* the reach of the CCPA's definition of earnings, adopting the view that earnings do not include "every asset that is traceable in some way to such compensation" and concluding that the cap on garnishment does not apply to income tax refunds. 417 U.S. at 651. At the very least, this language cautions against stretching the definition of "earnings" to include wage substitutes that are not explicitly mentioned in the statute.[1]

France alternatively argues that his disability payments are exempt under 28 U.S.C. § 3014(a)(2), which allows a debtor to elect to exempt property that is exempt under the law of the state where the debtor has been domiciled for at least 180 days. He argues that in California, where he is domiciled, disability insurance benefits are exempt from garnishment. Notably, § 3613(a)(2) states that § 3014 "shall

---

[1] Because this opinion creates a split with the Eighth Circuit, we circulated it in advance of publication to all judges of this court in regular active service, pursuant to Circuit Rule 40(e). None voted to hear the case en banc.

not apply to enforcement under Federal law." But France argues that this provision is inapplicable because the government used an Illinois procedural mechanism to seek discovery of his assets. He points to *Paul Revere Insurance Group v. United States*, 500 F.3d 957, 960 (9th Cir. 2007), in which the Ninth Circuit held that California law exempted disability income from garnishment of a restitution lien.

This argument is unpersuasive. As the government observes, although it issued a discovery citation under Illinois law, it did so only because Fed. R. Civ. P. 69(a) explicitly authorizes use of state procedure in obtaining discovery from a judgment debtor. More than that, once it obtained the information about France's assets from his insurer, the government moved for garnishment solely pursuant to § 3613. That fact sets this case apart from *Paul Revere*, where, critically, "the government elected to use California state law *to create and enforce* its judgment lien." 500 F.3d at 963 (emphasis added). In contrast, as the district court noted, the government here is enforcing a federal judgment lien and moved for garnishment under federal law. For that reason, we are convinced that state law exemptions are inapplicable to the government's enforcement efforts.

As for Duperon, she maintains that the district court erred in concluding that the child support she received from the insurance disbursements are not exempt under § 6334(a)(8). As a preliminary matter, however, we note that, although not meaningfully addressed in the appellate briefs, we are concerned about Duperon's standing to assert the exemption. In the district court, Duperon asserted standing under *States v. Kollintzas*, 501 F.3d 796, 800–01 (7th Cir. 2007),

which allowed a defendant's wife to participate in an appeal regarding collection proceedings against her husband under the Federal Debt Collection Procedures Act because she was a person with interest in property subject to collection. But Duperon's interest in this case appears to be limited to her role as a representative for her daughter, who is no longer a minor—a fact that Duperon more or less ignores. We need not resolve the appeal on this basis, however, because, as will be discussed, we are not persuaded that any interest Duperon (or her daughter) possesses trumps the government's restitution lien.

Duperon contends that, although the restitution order was entered before the marital settlement, the restitution lien did not attach to France's interest in the policy proceeds because the bankruptcy trustee, as administrator of the bankruptcy estate, obtained title to all of France's assets when he filed for bankruptcy in 2000. *See* 11 U.S.C. § 541(a)(1) (stating that, with limited exceptions, "all legal or equitable interests of the debtor in property" become part of the bankruptcy estate). Thus, in Duperon's view, the government's restitution lien attached to only the $9,296 that France began receiving after the California interpleader settlement, when the trustee relinquished its title to the insurance policy. Duperon emphasizes that a restitution lien is treated like a tax lien, 18 U.S.C. § 3613(c), and that the Supreme Court, in *United States v. Speers*, 382 U.S. 266, 275 (1965), held that a bankruptcy trustee's authority to settle outstanding debts, *see* Fed. R. Bankr. P. 9019, prevailed over a prior unrecorded federal tax lien.

But adopting Duperon's view would lead to the troubling result that, by concealing information from the

bankruptcy trustee—part of the basis for his criminal conviction—France might be able to shield a portion of his insurance payments from government collection. This concern underscores an important difference between this case and *Speers*, where the trustee knew about the pre-existing, unrecorded tax lien and specifically concluded that it was invalid as to him. 382 U.S. at 268. Here, in contrast, the government recorded its lien in the midst of the bankruptcy, and it appears that the trustee was never formally notified of it before entering the settlement.

More importantly, as the government emphasizes, Duperon's arguments run headlong into the text of the MVRA. As other circuit courts have held, the language in § 3613(a) stating that the statute operates "[n]otwithstanding any other Federal law" appears to supersede conflicting provisions of the Bankruptcy Code. *See Robinson*, 764 F.3d at 557 (holding that "§ 3613 supersedes the automatic stay and allows the government to enforce restitution orders against property included in the bankruptcy estate"); *Hyde,* 497 F.3d at 108 (holding that the Bankruptcy Code does not "restrict[ ] the reach of the MVRA's clear language"). As further pointed out by the Sixth Circuit in *Robinson*, § 3613(e) explicitly dictates that a bankruptcy discharge shall not "discharge liability to pay a fine pursuant to this section, and a lien filed as prescribed by this section shall not be voided in a bankruptcy proceeding," suggesting "that Congress had the potential effects of the Bankruptcy Code in mind when it drafted § 3613(a)." *Robinson*, 764 F.3d at 561–62. Finally, as also noted in *Robinson*, § 3613(c) states that a restitution lien "arises on the entry of judgment" without making any exception for pending bankruptcy matters. *Id.* at 562 ("Conspicuously, the Bankruptcy Code, including the

automatic stay, is absent from [§ 3613(a)'s] list of exceptions ....").  For these reasons, we are convinced that the bankruptcy proceedings here did not limit the reach of the MVRA as Duperon suggests.

Finally, Duperon argues that equitable estoppel should apply to bar the government from garnishing her child-support payments because the bankruptcy trustee, a party to the interpleader settlement, is part of the Department of Justice and thus, in her view, "in privity" with the United States Attorney's Office. Based on this understanding, she argues that the government should be bound by a provision in France's criminal plea agreement stating that the plea did not limit any "judicial civil claim, demand, or cause of action whatsoever of the United States or its agencies."

The district court found this argument to be "wholly without merit," and we agree. As the government notes, it is a high standard to apply equitable estoppel against the government. *See Matamoros v. Grams*, 706 F.3d 783, 793–94 (7th Cir. 2013) ("The Supreme Court has *never* affirmed a finding of estoppel against the government. And that is not for lack of review. The Court, in fact, has reversed every finding of estoppel that it has reviewed.") (internal quotations and alterations omitted). Although the United States Trustee Program is indeed part of the Department of Justice, 28 U.S.C. § 586, *see Bell v. Thornburg*, 743 F.3d 84, 88 (5th Cir. 2014) (explaining the history of the Trustee Program), the Supreme Court has long recognized that "[t]he bankruptcy trustee is the representative of the estate of the debtor, not an arm of the Government," *Cal. State Bd. of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 849 (1989) (internal quotations and alterations omitted); *see also* 11

U.S.C. § 101(27) (excluding a trustee who is serving as trustee in a bankruptcy case from the definition of "governmental unit"). Further, as often occurs, the United States Trustee here recruited a private attorney to serve as trustee, providing a further layer of separation between the trustee and the prosecuting attorneys. Because Duperon has provided no persuasive reason to allow the actions of a private bankruptcy trustee to estop the criminal enforcement efforts of the Department of Justice, we affirm the district court's refusal to apply equitable estoppel.

Accordingly, the district court's judgment is AFFIRMED.