# STATE OF MICHIGAN

# COURT OF APPEALS

COMERICA BANK,

       Plaintiff-Appellee,

v

MICHAEL KELMAN,

       Defendant-Appellant,

and

BIRMINGHAM BLOOMFIELD CREDIT
UNION,

       Garnishee Defendant-Appellee.

UNPUBLISHED
July 31, 2018

No. 336637
Oakland Circuit Court
LC No. 2012-124821-CK

Before: CAMERON, P.J., and JANSEN and O'CONNELL, JJ.

PER CURIAM.

Defendant, Michael Kelman, appeals as of right the trial court's order denying his objection to the writ of garnishment issued to garnishee-defendant, Birmingham Bloomfield Credit Union ("BBCU"). Plaintiff, Comerica Bank, issued a writ of garnishment to BBCU after Kelman defaulted on a home equity loan. Kelman objected to the writ of garnishment, arguing that the account funds included disability payments that were exempt from garnishment pursuant to MCL 600.6023(1)(f) and that the garnishment exceeded the statutory maximum under the federal Consumer Credit Protection Act ("CCPA"), 15 USC 1671 *et seq*. We vacate the trial court's order denying Kelman's objection to the writ of garnishment and remand for further proceedings consistent with this opinion.

## I. STANDARD OF REVIEW

We review questions of statutory interpretation de novo and a trial court's factual findings for clear error. *Hastings Mut Ins Co v Grange Ins Co of Mich*, 319 Mich App 579, 583, 587; 903 NW2d 400 (2017). A finding of fact "is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id* (citation and quotation marks omitted).

-1-

The primary goal of statutory interpretation is to give effect to the intent of the Legislature. The first step is to review the language of the statute. If the statutory language is unambiguous, the Legislature is presumed to have intended the meaning expressed in the statute. [*Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 76; 780 NW2d 753 (2010) (citation omitted).]

When interpreting a federal statute, Michigan appellate courts follow the same procedure, applying statutory definitions and the plain meaning of the statutory terms. *Walters v Nadell*, 481 Mich 377, 381-382; 751 NW2d 431 (2008). "However, if reasonable minds can differ concerning the meaning of a statute, judicial construction of the statute is appropriate." *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 373; 652 NW2d 474 (2002).

## II. STATE LAW GROUNDS

Kelman contends that the disability payments deposited into his BBCU account were exempt under MCL 600.6023(1)(f). To the extent that the disability payments were the source of the account funds, we agree. "As a general rule, all property is subject to execution to satisfy a judgment." *Cunningham Davison Beeby Rogers & Alward v Herr*, 198 Mich App 258, 259; 497 NW2d 575 (1993). MCL 600.6023 provides several exceptions to this rule. MCL 600.6023(1)(f) exempts "from levy and sale under an execution . . . [a]ny money or other benefits paid, provided, or allowed to be paid, provided, or allowed, by any stock or mutual life or health or casualty insurance company, on account of the disability due to injury or sickness of the insured person . . . ."

Comerica Bank contends that the statute does not apply to a garnishment action. The statute does not define "execution," so it is appropriate to consult a dictionary. *Salem Springs, LLC v Salem Twp*, 312 Mich App 210, 218; 880 NW2d 793 (2015). *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "execution" to include "the process of enforcing a legal judgment." To "levy" is defined, in part, as "to impose or collect by legal authority." *Id*. Further supporting Kelman's argument that MCL 600.6023(1)(f) applies to a garnishment is MCL 600.4031(1),[1] which states:

> [t]he provisions of the statutes relating to exemptions from execution, and the manner of levying upon property belonging to a class or species in which exemptions are by law allowed, shall be applicable to the application of property and obligations to claims by attachment and garnishment.

Therefore, garnishing funds in Kelman's account amounts to a levy as used in MCL 600.6023(1).

---

[1] Although Kelman did not cite this statutory provision in the trial court, it relates to Kelman's argument that MCL 600.6023(1)(f) exempts disability payments from garnishment, the primary issue Kelman raised in the trial court.

In addition, Kelman correctly contends that the disability payments were exempt even after they were deposited into the BBCU account. The plain language of MCL 600.6023(1)(f) states that the exemption applies to "[a]ny money or other benefits paid." Accordingly, the exemption applies even after the disability payment is deposited into an account.

Comerica Bank counters this conclusion by citing *Whitwood, Inc v South Boulevard Prop Mgt Co*, 265 Mich App 651; 701 NW2d 747 (2005). Reliance on this case is at Comerica Bank's peril, however. In *Whitwood*, 265 Mich App at 653, this Court discussed the garnishment of deposited teacher pension benefits, pursuant to MCL 38.1683, compared to deposited social security benefits, pursuant to 42 USC 407(a), neither of which are at issue in the present case. The *Whitwood* Court held that, in contrast to the social security funds, the teacher pension funds lost their protection following deposit because MCL 38.1683 did not include the protective language contained in 42 USC 407(a) exempting "moneys paid." *Id*. at 654-655. Accordingly, because the language of MCL 600.6023(1)(f) closely mirrors the outcome-determinative language of "moneys paid" in *Whitwood*, we conclude that the funds deposited at BBCU maintained their exemption.

Finally, we must address whether the BBCU account actually contained exempt funds. Although Kelman states on appeal that most of the funds in the account came from disability payments, the trial court made no factual findings on this issue, including what amount of the BBCU account reflected disability payments. Therefore, the trial court must determine what amount of the BBCU account balance, if any, is subject to garnishment.

## III. CCPA

Kelman contends that the CCPA also prohibits the garnishment of the BBCU account. We disagree. The CCPA generally limits garnishment to 25% of the individual's weekly "disposable earnings." 15 USC 1673(a)(1). The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 USC 1672(a). In *United States v Ashcraft*, 732 F3d 860, 864 (CA 8, 2013),[2] the Eighth Circuit Court of Appeals held that employer-funded disability payments constituted "earnings" as defined in the CCPA. *Ashcraft* is factually dissimilar from this case in one significant regard: Kelman's disability payments were not an employee benefit because he privately purchased the disability insurance policies. In addition, unlike *Ashcraft*, 732 F3d at 864, the record in this case does not contain the disability insurance policy or state its purpose. Therefore, we cannot conclude that the disability policy payments were "earnings" pursuant to the CCPA.

## IV. CONCLUSION

---

[2] Lower federal court decisions are not binding on this Court. *State Treasurer v Sprague*, 284 Mich App 235, 241-242; 772 NW2d 452 (2009).

We vacate the trial court's order denying Kelman's objection to the writ of garnishment issued to BBCU and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Peter D. O'Connell